THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARTHUR REPOLA, Appellant.

First Department, November 25, 1952.

*Joseph Lonardo* for appellant.

*Jack M. Cotton* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

CALLAHAN, J. The defendant attacks the sufficiency of the evidence to establish the two crimes of which he has been convicted and the legality of the consecutive sentences imposed for each conviction.

The defendant was convicted on the first and third counts of a three-count indictment alleging: 1. a violation of subdivision 1 of section 1751 of the Penal Law in the sale of a quantity of heroin to one Morris Lipsius on July 16, 1951; 2. (eliminated); and 3. a violation of subdivision 3 of section 1751 of the Penal Law by reason of the felonious possession of one quarter ounce and more of a substance containing 1% and more of heroin on the same date.

The substance of the proof was that in a warehouse on Water Street, New York City, on the morning of July 16, 1951, Lipsius had arranged for the purchase of one-half kiloliter of heroin from one Irving Wexler, who agreed to deliver the drug later in the day. The parties met in the evening and proceeded to 67th Street and York Avenue, where Lipsius was instructed to wait. Wexler went to 68th Street and waited at a point about

ninety feet west of York Avenue. He remained there about five minutes, when a black sedan driven by the defendant stopped in the street opposite Wexler, who was under the surveillance of government agents at all times. Wexler was dressed in shirt sleeves and had no package or newspaper in his possession. He entered the automobile and sat alongside the defendant, who was the sole occupant of the car. The automobile proceeded to the corner, where it was stopped by a traffic light. An agent saw Wexler take a package wrapped in the folds of a newspaper from the vicinity of the front seat between himself and the defendant. He placed this package on his lap. The car then turned and proceeded south on York Avenue to the next block, where Lipsius was waiting. Wexler left the car and handed the package still concealed in the newspaper to Lipsius. No arrest was made at that time. The contents of the package were later found to be nineteen ounces of heroin of about 30% consistency by volume. Lipsius testified that the same car had passed the point where he was standing shortly prior to the time Wexler had alighted from it.

When the defendant was arrested two weeks later, the police officer making the arrest told him, in effect, that he wanted to take the defendant to his home to see if he could find the " plant ", and the defendant replied, " You don't think I am crazy enough to keep a plant down there, do you." The officer defined " plant " as an underworld term generally used to refer to the source of supply of narcotics. When the officer called attention to the apparent affluence of the defendant, he responded, " I was willing to take a chance. You would have the same things if you would take a chance too." Again, in reply to the officer's statement that he was liable to a long prison sentence, the defendant said, " I know what the score is, I play with fire, and if I get burnt, I get burnt." No narcotic was found in the defendant's home. It does not appear from the record that the police officer on making the arrest advised the defendant that it was for an alleged sale of heroin on July 16, 1951, and the relation of the conversation to that occurrence is not clear.

The defendant contends that the receipt of the officer's testimony as to this conversation constituted error in that the defendant's statements contained nothing in the way of an admission of guilt of the crimes charged. While it is doubtful that the statements implied any admissions concerning the particular offenses charged, we do not think that reversible error

was committed in submitting to the jury the question as to whether the statements indicated guilty knowledge.

We find that the proof outside the alleged admissions was sufficient to warrant a finding of guilt. The evidence as to what occurred between the defendant and Wexler in connection with the delivery of the package was sufficient to present an issue for the jury as to whether the defendant was acting in concert with Wexler in the sale of a narcotic. This evidence disclosed, prima facie, that the defendant came to an appointed place in an automobile with a package furtively concealed in a newspaper on the front seat. This package contained a large quantity of heroin. There was proof from the testimony of Lipsius that this automobile first passed the point where Lipsius was standing, then picked up Wexler, and shortly thereafter returned to a point near Lipsius. Wexler then delivered the package still furtively concealed. With this proof of concerted action under circumstances indicating guilty knowledge, the prior transactions between Lipsius and Wexler became competent against the defendant. The proof of guilt would be adequate if the People's proof was credited by the jury.

This brings us to the question raised as to the propriety of the sentence.

Section 1938 of the Penal Law provides: " An act or omission which is made criminal and punishable in different ways, by different provisions of law, may be punished under any one of those provisions, but not under more than one; and a conviction or acquittal under one bars a prosecution for the same act or omission under any other provision."

The Trial Judge granted a request by the defendant to charge the jury that both of the counts, i.e., the count charging a sale and that charging possession involved but a single transaction at the place mentioned in the indictment. We think that this was in accord with the theory of the prosecution and with the proof. The sale of a half kiloliter of heroin had been arranged in the morning and delivery was consummated the same evening. There is no proof from which possession of the drug by the defendant could be inferred other than in connection with or relating to the sale charged. All the acts performed in connection with the possession were subsequent to the arrangement for the sale. While it is true that the unlawful possession would have been complete, even if the delivery had never been consummated, this would simply mean that the possession and the sale were separate crimes, upon which might rest separate convictions. It does not follow that they would be punishable

separately (*People* v. *Florio,* 301 N. Y. 46). The test on the question of separate sentences is whether the two crimes are factually part of a single act or transaction, not whether a single act or transaction offends against two statutes (*Matter of Zovick* v. *Eaton,* 259 App. Div. 585; *People ex rel. Thornwell* v. *Heacox,* 231 App. Div. 617). The factual occurrences in this case disclose that the possession of the heroin was only in connection with the sale and included in it. There could, no doubt, have been a possession of the drug apart from the sale and a sale distinct from possession, but we have no such situation here.

Although section 1938 refers to an act or omission, it is reasonably clear that the word " act " connotes a transaction constituting a criminal offense and not the separable parts thereof.

The subject of double punishment under these circumstances was recently reviewed in *People* v. *Savarese* (114 N. Y. S. 2d 816). There it was pointed out that California is the only State with a statute similar to our own. (See California Penal Code, § 654.) Accordingly, the decisions of California courts construing its law are apposite. We are persuaded that the correct view is expressed in *People* v. *Knowles* (35 Cal. 2d 175, 187) where it was said: " If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated. * * * It is the singleness of the act and not of the offense that is determinative. * * * The possession of narcotics is an offense distinct from the transportation thereof, but there can be only one conviction when a single act of transportation is proved and the only act of possession is that incident to the transportation. (*Schroeder* v. *United States,* 7 F. 2d 60, 65.)"

To justify the consecutive sentences in this case the District Attorney relies on decisions of Federal courts and other jurisdictions holding that the possession and sale of a contrabrand, such as intoxicating liquor, may constitute separate crimes punishable separately without offending the rule against double jeopardy. (See, e.g., *Albrecht* v. *United States,* 273 U. S. 1, 11; *Driskill* v. *United States,* 24 F. 2d 413, 414, and *People* v. *Montgares,* 347 Ill. 562.) But these jurisdictions do not have any statute such as section 1938 of our Penal Law, which may afford

broader protection than the constitutional prohibition against double jeopardy (*People* v. *Snyder,* 241 N. Y. 81). Accordingly, the authorities relied on by the District Attorney would seem distinguishable.

As we conclude that the defendant, while properly convicted of both sale and possession, should have been sentenced only for the sale as the higher grade of offense, we should modify the judgment by striking therefrom the second sentence to a consecutive term of five to ten years' imprisonment for the crime of possession. As so modified, we should affirm the judgment.

DORE, J. P., COHN, VAN VOORHIS and BREITEL, JJ., concur.

Order unanimously affirmed and judgment unanimously modified by striking therefrom the second sentence to a consecutive term of five to ten years' imprisonment for the crime of possession and, as so modified, affirmed. [See 281 App. Div. 679.]