[Sac. No. 7090. In Bank. Dec. 13, 1960.]

HOMER NEAL, Petitioner, v. THE STATE OF CALI-
FORNIA et al., Respondents.

William H. Abbott, under appointment by the Supreme Court, for Petitioner. Additional briefs were filed by the Petitioner *pro se.*

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, for Respondents.

TRAYNOR, J.—On June 4, 1949, petitioner threw gasoline into the bedroom of Mr. and Mrs. Theodore R. Raymond and ignited it. The Raymonds were severely burned. Petitioner was tried and convicted on two counts of attempted murder and one count of arson, and the trial court ordered that the sentences for the two counts of attempted murder run consecutively. On appeal the court held that the convictions were supported by sufficient evidence and that no reversible error was committed during the trial on the issue of guilt. Owing to the admission of incompetent evidence on the question of sentencing, however, the cause was remanded for a redetermination of the question whether the sentence for the second attempted murder should run consecutively or concurrently. (*People* v. *Neal,* 97 Cal.App.2d 668 [218 P.2d 556].) On August 9, 1950, the trial court again ordered that the two attempted murder sentences run consecutively. No further appeal was taken.

Petitioner now seeks a writ of mandamus to order the Adult Authority to fix the time when he may be released from prison. He contends that subdivision 1 of Penal Code, section 664, provides a maximum sentence of 10 years for attempted murder and that his convictions on a second count of attempted murder and on a count of arson were invalid on the ground that they punished him three times for a single act in violation of Penal Code, section 654.

Before we reach the merits of petitioner's contentions we must first determine whether they can be raised, now that the judgment of conviction has become final.

Mandamus will not ordinarily lie to correct an error in a final and appealable judgment. (*O'Neill* v. *Reynolds,* 116 Cal. 264, 266 [48 P. 57]; *Andrews* v. *Police Court,* 21

Cal.2d 479, 480 [133 P.2d 398, 145 A.L.R. 1042].) **[2]** Although a writ of mandamus may issue to vacate a judgment entered by a court that lacked jurisdiction, a motion to vacate such judgment must first be made in the court that entered the judgment, and a denial of such motion must be appealed in the regular manner. (*Andrews* v. *Superior Court,* 29 Cal.2d 208, 214 [174 P.2d 313] ; see *Phelan* v. *Superior Court,* 35 Cal.2d 363, 372 [217 P.2d 951].)

The proper remedy, if any, is habeas corpus. If the facts justify this remedy it is immaterial that petitioner had prayed for an inappropriate one. (*Owens* v. *Superior Court,* 52 Cal.2d 822, 827 [345 P.2d 921] ; see 3 Witkin, California Procedure, pp. 2568-2569.) Accordingly, we treat this petition as one for a writ of habeas corpus.

The petitioner's attack on the multiple sentences is a collateral attack on the judgment. Subdivision 1 of Penal Code, section 1487, limits the review of erroneous judgments by habeas corpus to cases in which the conviction and sentence imposed were in excess of the jurisdiction of the court. The crucial question, therefore, is whether the court acts in excess of its jurisdiction by imposing multiple sentences contrary to Penal Code, section 654.

The word jurisdiction is not limited to its conventional meaning of jurisdiction of the cause or the parties when the right to review a decision by a prerogative writ is the question for decision. (*Fortenbury* v. *Superior Court,* 16 Cal. 2d 405, 407 [106 P.2d 411] ; see *In re Bell,* 19 Cal.2d 488, 494 [122 P.2d 22].) "A court may have jurisdiction of the cause of action and of the parties, but it may lack the authority or power to act in the case except in a particular way. Under such circumstances, it is now generally held that the court had no jurisdiction." (*Fortenbury* v. *Superior Court, supra,* at pp. 407-408.) Thus, the writ of habeas corpus has issued when the defendant was erroneously sentenced to an indeterminate rather than a fixed term (*In re Lee,* 177 Cal. 690, 694 [171 P. 958]), and we have stated that the writ lies when the trial court has sentenced a defendant to a term in excess of the maximum provided by law. (See *In re McInturff,* 37 Cal.2d 876, 880 [236 P.2d 574] ; *In re Morck,* 180 Cal. 384 [181 P. 657].)

Habeas corpus, however, cannot serve as a substitute for appeal to review a determination of fact made on conflicting evidence. (*In re Dixon,* 41 Cal.2d 756, 760 [264 P.2d 513] ; *In re McInturff,* 37 Cal.2d 876, 880 [236 P.2d 574] ; *In re*

*Lindley,* 29 Cal.2d 709, 722 [177 P.2d 918] ; *In re Connor,* 16 Cal.2d 701, 705-706 [108 P.2d 10].) ▮▮▮ Nor will the writ lie to review a decision of a trial court that had discretion to follow different courses of action. ▮▮▮ The writ will issue, however, to review an invalid sentence, when, without the re-determination of any facts, the judgment may be corrected to ''accord with the only other possible determination in the circumstances.'' (*In re McInturff, supra,* at p. 881.)

The attorney general contends, however, that the question whether a person has been made to suffer double punishment for a single act is a question of fact and therefore habeas corpus will not lie. He invokes *In re Chapman,* 43 Cal.2d 385, 390 [273 P.2d 817] where the court stated: ''Whether the evidence accepted by the trier of fact shows petitioner guilty of one crime or of two is in part a factual question. 'It is, of course, an established rule that habeas corpus may not be used instead of an appeal to review determinations of fact made upon conflicting evidence after a fair trial. [Citations.] Likewise, the writ is not available to correct errors or irregularities relating to ascertainment of the facts when such errors could and should have been raised by appeal. [Citations.]' ''

On the record herein we are not required to review determinations of fact made upon conflicting evidence or to correct errors or irregularities relating to ascertainment of the facts. The return to the order to show cause does not take issue with petitioner's statement of facts. The recital of facts by both parties, apparently taken from the statement of facts in *People* v. *Neal,* 97 Cal.App.2d 668, 669-672 [218 P.2d 556], discloses only a single course of criminal conduct involving the commission of three offenses, motivated by petitioner's determination to kill Mr. and Mrs. Raymond because he believed Mr. Raymond had alienated the affections of his wife. Our own examination of the trial transcript discloses nothing to the contrary. Unlike *In re Chapman, supra,* this is not a case, therefore, where the court in proceeding to punish for all three convictions could be said to have rested its determination upon conflicting evidence. ▮▮▮ The applicability of a statute to conceded facts is a question of law. (*Nelson* v. *Montgomery Ward & Co.,* 312 U.S. 373, 376 [61 S.Ct. 593, 85 L.Ed. 897] ; *Estate of Madison,* 26 Cal.2d 453, 456 [159 P.2d 630].)

▮▮▮ Since the facts in the instant case are undisputed and the only question as to the issue of multiple punishment is the applicability of Penal Code, section 654, habeas corpus is a proper remedy to review that issue.

 Habeas corpus is also a proper remedy to review the issue whether the Adult Authority has misinterpreted subdivision 1 of Penal Code, section 664, and is therefore confining petitioner in excess of the time allowed by law. (Pen. Code, § 1487, subd. 2.) Even if the petitioner is not entitled to his immediate release, an alleged misinterpretation by the Adult Authority of the maximum sentence under which a prisoner is serving is reviewable by habeas corpus, since it would affect the Adult Authority's fixing of the prisoner's indefinite sentence and his eligibility for parole. (See *In re Chapman,* 43 Cal.2d 385, 387 [273 P.2d 817] ; *People* v. *Kehoe,* 33 Cal.2d 711, 716 [204 P.2d 321] ; *People* v. *Craig,* 17 Cal.2d 453, 458-459 [110 P.2d 403].)

We therefore reach the merits. Petitioner's conviction of one count of arson and two counts of attempted murder rests upon defendant's act of throwing gasoline into the bedroom of Mr. and Mrs. Raymond and igniting it. Punishment for two offenses arising from the same act is prohibited by the constitutional and common-law rule against multiple punishment for necessarily included offenses (*People* v. *Kehoe,* 33 Cal.2d 711, 713 [204 P.2d 321]) and by Penal Code, section 654, which provides that ''An act or omission which is made punishable in different ways by different provisions of this code may be punishable under either of such provisions, but in no case can it be punished under more than one.''[1]

None of Neal's convictions is for a necessarily included offense. '' [W]here an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.'' *People* v. *Greer,* 30 Cal.2d 589, 596 [184 P.2d 512].) Arson can be committed without attempting a murder, and the attempted murder of Mr. Raymond could have been committed without attempting to murder Mrs. Raymond.

 The proscription of section 654 against multiple punishment of a single act, however, is not limited to necessarily included offenses. (*People* v. *Logan,* 41 Cal.2d 279, 290 [260 P.2d 20] ; *People* v. *Knowles,* 35 Cal.2d 175, 187 [217 P.2d 1] ; *People* v. *Kynette,* 15 Cal.2d 731, 761-762 [104 P.2d

---

[1]Although section 654 does not expressly preclude double punishment when an act gives rise to more than one violation of the same Penal Code section or to multiple violations of the criminal provisions of other codes, it is settled that the basic principle it enunciates precludes double punishment in such cases also. (*People* v. *Brown,* 49 Cal.2d 577, 591 [320 P.2d 5] ; see *People* v. *Roberts,* 40 Cal.2d 483, 491 [254 P.2d 501] ; *People* v. *Clemett,* 208 Cal. 142, 144 [280 P. 681] ; *People* v. *Nor Woods,* 37 Cal.2d 584, 586 [233 P.2d 897].)

794] ; accord: *People* v. *Repola,* 280 App.Div. 735, 281 App. Div. 679 [117 N.Y.S.2d 283, 288], affirmed 305 N.Y. 740 [113 N.E.2d 421] ; *People* v. *Savarese,* 1 Misc.2d 305 [114 N.Y.S.2d 816, 835-836] ; see *People* v. *Snyder,* 241 N.Y. 81, 83 [148 N.E. 796] [interpreting N.Y. Pen. Code, § 1938, which is identical with Cal. Pen. Code, § 654].) In *People* v. *Knowles* 35 Cal.2d 175, 187 [217 P.2d 1], we stated: ''If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated. If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses. It is the singleness of the act and not of the offense that is determinative.'' Thus the act of placing a bomb into an automobile to kill the owner may form the basis for a conviction of attempted murder, or assault with intent to kill, or malicious use of explosives. Insofar as only a single act is charged as the basis for the conviction, however, the defendant can be punished only once. (*People* v. *Kynette,* 15 Cal.2d 731, 762 [104 P.2d 794].) Likewise, the act of using an instrument to cause an abortion which results in death can be punished for abortion or for murder in the second degree but not for both. (*People* v. *Brown,* 49 Cal.2d 577, 590-594 [320 P.2d 5].)

Few if any crimes, however, are the result of a single physical act. ''Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.'' (*People* v. *Brown, supra,* 591.)

 Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.

Thus in *People* v. *Logan,* 41 Cal.2d 279, 290 [260 P.2d 20], defendant, who chose to commit robbery by first knocking out

his victim with a baseball bat and then taking his valuables was convicted of both robbery and assault. We reversed the assault conviction on the ground that the double punishment violated section 654. In *In re Chapman,* 43 Cal.2d 385, 387 [273 P.2d 817], however, we held that when the assault is not a means of perpetrating the robbery but is an act that follows after the robbery is completed the defendant is guilty of two punishable acts. Likewise in *People* v. *Greer,* 30 Cal.2d 589, 600 [184 P.2d 512], statutory rape and lewd and lascivious conduct were held to be one act since both offenses arose from a single act of sexual intercourse. In *People* v. *Slobodion,* 31 Cal.2d 555, 561-563 [191 P.2d 1], however, we sustained convictions for sex perversion and lewd and lascivious conduct, even though both acts were closely connected in time and a part of the same criminal venture since the act giving rise to the lewd and lascivious conduct was separate and distinct and was not incidental to or the means by which the act of sex perversion was accomplished.

In the instant case the arson was the means of perpetrating the crime of attempted murder just as the malicious use of explosives was the means for perpetrating the attempted murder in *People* v. *Kynette,* and the assault with the baseball bat was the means of committing robbery in *People* v. *Logan.* The conviction for both arson and attempted murder violated Penal Code, section 654, since the arson was merely incidental to the primary objective of killing Mr. and Mrs. Raymond. Petitioner, therefore, can only be punished for the more serious offense, which is attempted murder.

The two attempted murder convictions, however, present a different problem. The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person. This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled. Section 654 is not "... applicable where ... one act has two results each of

which is an act of violence against the person of a separate individual." (*People* v. *Brannon*, 70 Cal.App. 225, 235-236 [233 P. 88]; see also *People* v. *Major*, 65 Cal. 138, 146 [3 P. 597, 52 Am.Rep. 295]; *People* v. *Gaither*, 173 Cal.App.2d 662, 668 [343 P.2d 799]; *People* v. *Holman*, 72 Cal.App.2d 75, 100 [164 P.2d 297].) Thus, in *People* v. *Knowles, supra,* 35 Cal.2d 175, 187, the defendants kidnaped two persons for the purpose of robbing them. The robbery convictions were reversed by reason of Penal Code, section 654, but both kidnaping convictions were affirmed.

The two consecutive attempted murder convictions were therefore properly imposed. Since petitioner was tried for both crimes at the same time we do not decide whether section 654 requires all of the prosecutions to be brought at the same time. Section 654's preclusion of multiple prosecution is separate and distinct from its preclusion of multiple punishment. The rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible.

Petitioner's contention that subdivision 1 of Penal Code, section 664, provides for a maximum sentence of 10 years for attempted murder is without merit. Both the 1949 and present wording of the section provide a maximum sentence of 20 years for the crime of attempted murder.

The arson conviction, being in excess of the jurisdiction of the court, is set aside, and the Adult Authority is directed to exclude from its consideration the purported sentence for arson. Petitioner, however, is not entitled to release so long as he is held under valid judgments of conviction for his other crimes. The order to show cause is, therefore, discharged and the writ of habeas corpus is denied.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

SCHAUER, J., Dissenting.—In my opinion review of the question whether a prisoner is being punished under more than one penal statute for one "act" within the meaning of Penal Code, section 654, presents a problem of the sufficiency of the evidence to show that the course of criminal conduct which resulted in multiple sentences was a divisible transaction. (See the treatment of the question in such cases as *People* v.

*Greer* (1947), 30 Cal.2d 589, 604 [184 P.2d 512]; *People* v. *Slobodion* (1948), 31 Cal.2d 555, 562-563 [191 P.2d 1]; *People* v. *Knowles* (1950), 35 Cal.2d 175, 188 [13b] [217 P.2d 1]; *People* v. *Kehoe* (1949), 33 Cal.2d 711, 714-715 [204 P.2d 321]; *People* v. *Logan* (1953), 41 Cal.2d 279, 290 [11] [260 P.2d 20]; *People* v. *Brown* (1958), 49 Cal.2d 577, 590-591 [13] [320 P.2d 5]; *cf. People* v. *Hoyt* (1942), 20 Cal.2d 306, 316-317 [8] [125 P.2d 29].)

Although the majority say (*ante,* p. 17) that they do not review a question of fact but determine only a question of law—the application of a statute to uncontradicted facts—actually they review and strike down a factual determination which rested upon evidence that supports the contrary inferences on which the trial court based its final judgments. The majority in effect recognize that their redetermination necessarily involves a review of the sufficiency of the evidence by the manner in which they state the general test whereby they would solve the problem. They say (*ante,* p. 19) that "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." Whether the criminal's intent is directed toward one principal "objective" and whether his other crimes are merely "incident" to that objective, under the majority's view, would be questions for initial decision by the trial court, for review on appeal, and again (whether or not the questions were raised at the trial or on appeal) for review on habeas corpus by every court (in felony cases the superior court, the District Court of Appeal and this court) which has jurisdiction. But such review by habeas corpus obviously could not be carried out in an informed fashion except by appraising the evidence which was presented at the trial or perhaps (the majority suggest no limitation in this regard) by taking evidence additional to that received at the trial.

It requires no extensive evidential statement to demonstrate that the issue which the majority here resolve is in essence factual and that in effect the majority have retried the case insofar as the arson count is concerned. The defendant was charged with and convicted of two crimes against persons (attempted murders) and one crime against property (arson). As pertinent here, murder is defined by Penal Code, section 187 ("Murder is the unlawful killing of a human being, with

malice aforethought") and section 189 ("All murder which is perpetrated by . . . wilful, deliberate, and premeditated killing, or which is committed *in the perpetration or attempt to perpetrate arson,* rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree. . . .") (Italics added). Attempted murder is made punishable by subdivision 1 of section 664 of the Penal Code, and by legal definition attempted murder is the doing of a direct, ineffectual act toward consummation of the intended murder. (See *People* v. *Snyder* (1940), 15 Cal.2d 706, 708 [1] [104 P. 2d 639] ; *People* v. *Camodeca* (1959), 52 Cal.2d 142, 145 [1] [338 P.2d 903].) Arson, as pertinent here, is defined by section 447a of the Penal Code ("Any person who wilfully and maliciously sets fire to or burns or causes to be burned . . . any dwelling house . . . shall be guilty of arson. . . ."). Here the defendant intended to, and did, accomplish the crime of arson, and he also intended and attempted, but failed, to accomplish, two killings in the perpetration of arson. Obviously the crime of attempted murder is of a class separate from the crime of arson and each class involves proof of one or more factual elements not common to the other. The three convictions were reviewed on appeal (*People* v. *Neal* (1950), 97 Cal.App.2d 668 [218 P.2d 556] ) and the reviewing court considered and commented not only on evidence tending to establish the crimes against the persons of the victims of attempted murder, particularly the evidence of "specific intent to murder Mr. and Mrs. Raymond" (p. 672 [2, 3] of 97 Cal.App.2d) but also on the evidence which tended to show that defendant wilfully and maliciously burned the house in which they dwelt (p. 670 [1] of 97 Cal.App.2d) and "had an inclination to pyromania" (p. 673 [5] of 97 Cal.App.2d). In these circumstances I cannot agree with the majority that the criminal who deliberately chose to commit both arson and murder by the same incendiary course of conduct necessarily and as a matter of law committed but one "act . . . which is made punishable in different ways by different provisions of this code" (Pen. Code, § 654).

The subject use of habeas corpus is squarely contrary to the following rules: " [H]abeas corpus may not be used instead of an appeal to review determinations of fact made upon conflicting evidence after a fair trial. [Citations.] Likewise, the writ is not available to correct errors or irregularities relating to ascertainment of the facts when such errors could and should have been raised by appeal. [Citations.]" (*In re*

*Dixon* (1953), 41 Cal.2d 756, 760 [6, 7] [264 P.2d 513].) In the case of *In re Chapman* (1954), 43 Cal.2d 385, 390 [9, 10] [273 P.2d 817], although we passed on and rejected the merits of a prisoner's contention, raised on habeas corpus, that his course of criminal conduct could be punished only once, we also pointed out that "Whether the evidence accepted by the trier of fact shows petitioner guilty of one crime or of two [or of a course of criminal conduct which, although it constitutes two separately defined crimes, can be punished but once by reason of section 654] is in part a factual question," and we quoted and relied on the foregoing rules stated in the Dixon case as an alternate ground for denying the writ.

While I have approved of and participated in decisions of this court which have somewhat broadened the uses of habeas corpus, employment of the writ *to review or initially decide questions of the intent and objective of the criminal actor* seems to me to be a radical departure which goes far beyond the scope of the writ as previously extended. (See *In re Mc-Inturff* (1951), 37 Cal.2d 876, 880 [3] [236 P.2d 574].) Many California prisoners are serving multiple final sentences for offenses variously connected in their commission; such prisoners will, of course, be encouraged by today's decision to flood this court, or lower courts, with applications for similar evidential reviews. I think it unsound and highly undesirable to now permit—indeed, require—the courts to go behind these final judgments and open or reopen the often difficult and in large part factual questions attendant upon the application of section 654.

The problems inherent in the majority's action will become particularly complex if the courts are to continue to assume to review on habeas corpus the sufficiency of the evidence to support separate sentences for the crimes which are enumerated in Penal Code, section 189, as a part of the definition of murder of the first degree[1] and for murders or attempted murders factually connected with such felonies. It has been routine procedure in such cases to sentence defendants both for murder and for the other felony named in section 189. (E.g., *People* v. *Chavez* (1958), 50 Cal.2d 778, 782-783 [arson] [329 P.2d 907]; *People* v. *Riley* (1950), 35 Cal.2d 279, 280 [robbery] [217 P.2d 625]; *People* v. *Simeone* (1945), 26 Cal.2d

---

[1] "'All murder which is . . . committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree. . . .'" (Pen. Code. § 189.)

795, 797 [robbery] [161 P.2d 369] ; *People* v. *Kelso* (1945), 25 Cal.2d 848, 849 [burglary] [155 P.2d 819] ; *People* v. *Hill* (1943), 22 Cal.2d 863, 864 [robbery] [141 P.2d 418] ; *People* v. *King* (1939), 13 Cal.2d 521, 522-523 [robbery] [90 P.2d 291].) And in what appears to be the only case in which the question was particularly discussed, it was held that such sentences (for robbery and murder in the perpetration of the robbery) did not contravene section 654. (*People* v. *Hoyt* (1942), *supra,* 20 Cal.2d 306, 316-317 [8].) Are the courts now to reexamine the cases of prisoners serving final sentences of imprisonment for both murder and a related robbery and to determine whether a defendant set out to rob and incidentally killed or set out to kill and incidentally robbed (in either of which events, under the majority's holding, he could be sentenced at most for murder), or whether perchance he set out to commit both robbery and murder and executed both of his intents as part of the same transaction by divisible acts?

As another example of difficulties with which the courts will now be confronted (if today's majority decision is consistently applied), reference may be made to prisoners who are confined under multiple sentences for forgeries and use of false writings in closely related transactions. Where such multiple convictions (in one class of crime or another) have been sustained (see *In re Horowitz* (1949), 33 Cal.2d 534, 541-545 [4] [203 P.2d 513] ; *People* v. *Cline* (1947), 79 Cal.App.2d 11, 19 [4] [179 P.2d 89]) or have never been questioned, as is doubtless true in hundreds of cases, can these prisoners now obtain review by habeas corpus to decide the question whether their offenses can be punished but once because they had but one objective?

Furthermore, it does not appear that the majority furnish a satisfactory test to be applied by sentencing courts.[2] Under the majority view, for example, a defendant who chooses to fire one shot as a means of murdering A, succeeds only in terrifying A, but incidentally kills bystander B, would apparently be punishable both for the murder of B and the assault on A (a violation of two statutes by one act). (See *ante,* pp. 20-21 ; *People* v. *Brannon* (1924), 70 Cal.App. 225, 235 [5] [233 P. 88].) But a defendant who chooses arson of B's build-

---

[2]In this regard my concern is with future application of the majority opinion by trial courts; at this writing it would seem impractical if not impossible to formulate a single, general test which would encompass all the previous, inconsistent appellate decisions concerning multiple punishment under section 654.

ing, occupied by A, as a means of both murdering A and injuring B by destroying his property, and who succeeds in destroying the building but not in killing A, would be punishable at most for attempted murder of A because he committed only the one act of setting fire to a building. This does not appear to be "punishment . . . commensurate with his criminal liability" (*ante,* p. 20), one of the theoretical bases apparently relied on by the majority both to permit punishment for two offenses in the first instance and for only one offense in the second instance.

My principal concern, however, as already indicated is the misuse of habeas corpus to strike down the final judgment of conviction of arson on the ground (*ante,* p. 21) that it is "in excess of the jurisdiction of the [trial] court" because of its factual connection with the attempted murders. For the reasons above stated I cannot join in the opinion or the judgment and would, instead, simply discharge the order to show cause and deny any relief to the petitioner, whether his application be treated as one seeking habeas corpus, mandate, or some other undesignated remedy.

McComb, J., concurred.

The applications of petitioner and of respondent for a rehearing were denied January 10, 1961. Schauer, J., and McComb, J., were of the opinion that the applications should be granted.