Duncan S. McNab, J.
The defendant has been charged in a single indictment with the crimes of criminal sale of a controlled substance in the third degree (2 counts) and criminal possession of a controlled substance in the third and seventh degrees (2 counts each). The charges stem from two allegedly illegal sales of heroin, one on January 29 and the other on January 31 of 1974. Each sale gave rise to a charge of illegal sale, possession with intent to sell, and possession of a controlled substance.
A trial was commenced on November 7, 1974. That trial ended on November 15,1974. The jury was discharged when it announced that it could not reach a verdict on any of the counts.
A second trial on the indictment began on December 2, 1974. That trial ended on December 6, 1974 in the taking of a partial verdict under CPL 310.70. The jury found the defendant guilty on both counts of criminal possession in the seventh degree, not guilty of criminal sale in the third degree stemming from the alleged sale on January 31,1974, and unable to reach a verdict on the remaining three counts.
The defendant now moves to dismiss the unresolved counts. Reliance is placed upon CPL 310.70 (subd 2), as provided in section 1 of chapter 966 of the Laws of 1970 (eff Sept. 1, 1971).
At the time of the commission of the crime and the handing up of the indictment, the 1971 version of CPL 310.70 was in effect. Prior to the commencement of the first trial, that section was amended, effective September 1, 1974. The question thus presented is: "Which law applies?”
CPL 310.70 (subd 2) of the 1971 statute provided that: "Upon the rendition of a partial verdict pursuant to subdivision one, a defendant may be retried upon an unresolved count of an indictment when such unresolved count is consecutive, as that term is defined in subdivision two of section 300.30, as to every count upon which the jury did render a verdict, whether of guilty or not guilty.” CPL 300.30 (subd 2) *58 defines "consecutive counts” as "two or more counts of an indictment upon which consecutive sentences may be imposed in case of conviction thereon.” Subdivision 2 of section 70.25 of the Penal Law provides that, "when more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences must run concurrently.” Additionally, CPL 40.10 (subd 2) provides that, a " 'criminal transaction’ means conduct which establishes at least one offense, and which is comprised of two or more or a group of acts * * * (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident”.
Reading these provisions together, it is clear that only concurrent sentences could be imposed for convictions rendered on charges of illegal sale, possession with intent to sell, and possession stemming from a single illegal transaction. Each of the three alleged crimes stems from a single act, the alleged illegal sale. This conclusion is in accord with that reached in People v Repola (280 App Div 735).
The instant indictment charges the defendant with two illegal sales. Each sale forms the basis for three crimes; that is, illegal sale, possession with intent to sell, and possession. As the jury returned verdicts on at least one of the crimes arising from each criminal transaction, application of the 1971 statute would bar retrial of the unresolved counts as they are concurrent with those counts upon which verdicts were rendered.
The amended version of CPL 310.70 (subd 2) has a radically different effect., It provides, in part, that: "2. Following the rendition of a partial verdict pursuant to subdivision one, a defendant may be retried for any submitted offense upon which the jury are unable to agree unless * * * (b) the submitted offense which was the subject of the disagreement, and some other submitted offense of higher or equal grade which was the subject of a verdict of conviction, were so related that consecutive sentences thereon would not have been imposed upon a defendant convicted of both such offenses.”
The amended statute greatly increases the situations in which retrials will be permitted on unresolved counts. Under paragraph (b) of subdivision 2, a defendant may be retried on *59 any unresolved count unless a verdict of conviction was returned on a count of higher or equal grade to the unresolved count and the resolved and unresolved counts are so related that consecutive sentences could not have been imposed for both offenses. As noted in the commentary: "this second ground preserves the old consecutive sentence basis [but] it does so only partially and in a way which materially enlarges the potential for retrial of unresolved offenses”. (Supplementary Practice Commentary, 1974, McKinney’s Cons. Laws of N.Y., Book 11A, CPL 310.70, p 123.)
Application of this section to the instant case would permit the People to retry the defendant on all three unresolved counts. As the only counts that were the subject of a conviction were the misdemeanor possession counts relating to both sales, the two unresolved counts of criminal possession of a controlled substance in the third degree and the remaining count of criminal sale of a controlled substance in the third degree would be subject to retrial.
Clearly, application of the amended statute would expose the defendant to the rigors of a third trial and a potential sentence of up to life imprisonment. The issue thus presented is whether application of the amended statute violates the ex post facto clause of section 10 of article I of the United States Constitution.
The first time the Supreme Court of the United States was called upon to interpret section 10 of article I was in Calder v Bull (3 Dallas [3 US] 386) decided in 1798. Mr. Justice Chase, writing for the court, defined four distinct classes of laws encompassed by the ex post facto clause (p 390): "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law, that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than was annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender. ”
In United States v Hall (2 Wash. 366, 373), Mr. Justice Washington reiterated much of what was said in Calder, but added, in his charge to the jury, that "an ex post facto law is one which * * * in relation to the offence or its consequences, alters the situation of a party, to his disadvantage.” This *60 concept was adopted by the United States Supreme Court in Kring v Missouri (107 US 221), and thus established a fifth class of laws embraced by the clause (Medley, Petitioner, 134 US 160; Duncan v Missouri, 152 US 377; People v Cox, 67 App Div 344; Payne v Nash, 327 F2d 197).
In urging application of the new statute, the People have argued that the change is merely procedural and thus entitled to be applied retroactively. As a general proposition, this is true. Procedural statutes operate retroactively and may apply even though the offense was committed before the effective date of the statute (22 CJS, Criminal Law, § 23; United States v Papworth, 156 F Supp 842, affd 256 F2d 125, cert den 358 US 854, rehearing den 358 US 914).
In Kring (supra), the court was faced with the same argument. Mr. Justice Miller took great pains to define the term "procedure.” He concluded that whatever it may be said to be, a procedural statute is not exempt from being held ex post facto merely because it is so denominated when it adversely affects a "substantial right” of the accused. He wrote (p 232):
"Can the law with regard to bail, to indictments, to grand juries, to the trial by jury, all be changed to the disadvantage of the prisoner by State legislation after the offence was committed, and such not held to be ex post facto because it relates to procedure * * *
"And can any substantial right which the law gave the defendant at the time to which his guilt relates be taken away from him by ex post facto legislation, because, in the use of a modern phrase, it is called a law of procedure? We think it cannot.”
Of course, just what procedural changes will amount to an ex post facto law will depend upon that law’s effect upon the accused (United States v Henson, 486 F2d 1292, 1306), and its effect upon his rights must be " 'looked at in the light of reason and common sense.’ ” (Payne v Nash, supra, p 200.) Additionally, "[j]ust what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced with a formula or stated in a general proposition. The distinction is one of degree.” (Beazell v Ohio, 269 US 167, 171.) "And there may be procedural changes which operate to deny to the accused a defense available under the laws in force at the time of the commission of the offense, or which otherwise affect him in such a *61 harsh and arbitrary manner as to fall within the constitutional prohibition.” (Beazell v Ohio, supra, p 170.)
Wherever the line may be drawn, it is clear that "[a] statute is not [in one of the classes embraced by the clause] unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed.” (Thompson v Utah, 170 US 343, 351.)
The following are examples of procedural statutes that have been held not to violate the ex post facto clause and are thus entitled to retroactive application: enlarging the class of persons who are competent to testify at trial (Hopt v Utah, 110 US 574); extending the jurisdiction where a trial may be held (Cook v United States, 138 US 157); abolishing courts and creating new ones without affecting substantial rights (Duncan v Missouri, 152 US 377, supra); changing the qualifications of those who could serve on grand and petit juries (Gibson v Mississippi, 162 US 565); making the practice of medicine by a person previously convicted of a felony a crime (Hawker v New York, 170 US 189); allowing into evidence a disputed document under a different rule than that in effect at the time of the crime (Thompson v Missouri, 171 US 380); expanding the People’s right to appeal an unfavorable decision (Mallet v North Carolina, 181 US 589); a change which mandated joint trials of codefendants except for good cause shown as opposed to the prior law where severance was granted on mere application (Beazell v Ohio, supra); expanding the jurisdiction of a court to try a crime previously beyond the scope of its jurisdiction (People v Green, 201 NY 172); providing for expanded joinder of crimes in a single indictment (People ex rel. Pincus v Adams, 274 NY 447); changing the procedure by which the District Attorney could prove a prior conviction for sentencing purposes (People ex rel. Taylor v Jennings, 134 Misc 586); change in the number of grand jurors from 16 to 19 (Hallock v United States, 185 F 417); decrease in the allowance of time off for good behavior (Graham v Thompson, 246 F2d 805); allowing Judge and not jury to determine existence of prior conviction for purposes of recidivist statute (Payne v Nash, 327 F2d 197, supra).
Examples of procedural statutes that have adversely affected substantial rights of an accused and thus violate the clause are: increased punishment for the same offense (Medley, Petitioner, 134 US 160, supra); decrease in the number of *62 trial jurors (Thompson v Utah, 170 US 343, supra); charge permitting conviction for assault under indictment charging manslaughter where such was not permitted at time of offense (People v Cox, 67 App Div 344, supra); trial by information where prior law required finding of an indictment and hence review by grand jury (Putty v United States, 220 F2d 473); Mafnas v Government of Guam, 228 F2d 283); requiring defendant to prove insanity by a preponderance of the evidence where former rule required People to prove criminal responsibility beyond a reasonable doubt where defense was raised (United States v Williams, 475 F2d 355); removal of discretionary power of Judge to bar introduction of prior convictions on cross-examination (United States v Henson, 486 F2d 1292); removal of discretionary power of Judge in sentencing (Matter of Nasti v Downs, 169 Misc 989).
While the formation of absolute rules is neither possible nor desirable, the afore-mentioned cases help to establish the parameters of what is a substantial right and thus within the purview of the clause.
In the case now before the court, the People urge retroactive application of the amended statute. As previously noted, if this were done, the defendant would be exposed to a retrial upon the unresolved counts and additional punishment upon conviction thereof.
Prior to the amendment, that is, at the time of the commission of the offense, that same statute provided the accused with an absolute defense against reprosecution. He could offer into evidence the prior verdict and plead it as a bar to a retrial on any unresolved count that was "concurrent” with a count upon which a verdict was rendered. In essence, the original statute provided the defendant with immunity from reprosecution under the present circumstances.
The People seek to deprive the defendant of this right on the grounds that the change in the statute is merely procedural. With this the court cannot agree.
Immunity from reprosecution is a substantial right and a statute which creates the right is not one that relates to mere procedure. It provides the defendant with a defense to the charges presented against him and he is entitled to have the benefit of that defense. It was in existence at the time of the commission of the crime and, since it is a substantial right, it becomes annexed thereto.
The rule against double jeopardy, like the statute under *63 consideration, provides the defendant with immunity from reprosecution. A change in the rule against double jeopardy that would permit a second trial of the same offense where such trial was previously barred would, without question, be a change adversely affecting a substantial right of the accused. Retroactive application of such a change would violate the ex post facto clause.
The statute in question does not rest upon the same principles as does double jeopardy. Rather, it represents a policy created by the Legislature as to when unresolved counts may be retried. Though the underpinnings of double jeopardy and CPL 310.70 may be different, their effect is the same. Both laws provide the defendant with immunity from reprosecution, albeit, in different circumstances and upon different principles. As the net effect of the two laws is the same, the clause should apply with equal force to the amended statute as it would to a similar change in the rule against double jeopardy.
Not only would retroactive application deny the defendant the benefit of the defense, but it also alters the legal rules of evidence in that the prior verdict is not admissible into evidence or, even if admissible, it is given no weight. In effect, the statute either denies admission or consideration of evidence that would have previously barred a conviction.
Furthermore, the new statute exposes the defendant to additional penalties. It is true that it does not inflict greater punishment for the crimes of which he has been convicted, but there is no material difference between that and the fact that application of the amended statute would expose him to greater punishment.
In sum, retroactive application of the amended statute violates the ex post facto clause. It alters the situation of the defendant to his disadvantage; it deprives him of a defense available to him at the time of the commission of the crime; it exposes him to greater punishment; and it alters the rules of evidence in such a manner that it is easier to convict the defendant than it was under the law in effect at the time of the commission of the offense.
The case which most closely parallels the instant one and which the court finds controlling upon the issue before it is Kring v Missouri (107 US 221, supra). In Kring, the defendant was indicted for murder in the first degree alleged to have been committed on January 4, 1875. The first two trials failed *64 to resolve the charges against him. At the third trial, Kring pleaded guilty to murder in the second degree. The plea was accepted by the prosecution and the court and he was sentenced to 25 years in the penitentiary. An appeal was taken upon the grounds that he had an agreement with the prosecuting attorney that in return for his plea his sentence would not exceed 10 years. The Supreme Court of Missouri reversed the judgment and remanded the case to the criminal court for further proceedings.
When the case came before the lower court, the defendant refused to withdraw his plea of guilty to murder in the second degree. The court then, over his protest, made an order setting aside his plea of guilty and entered a general plea of not guilty to the charges in the indictment. On this plea, he was tried, found guilty of murder in the first degree, and sentenced to death.
Under the laws of Missouri at the time of the commission of the offense, a plea or conviction of murder in the second degree was deemed an acquittal of murder in the first degree and the defendant could not again be tried for that offense. The defendant raised this defense on appeal to the State courts, but it was rejected on the grounds that that law had been amended, effective November 30, 1875, and now permitted a trial and conviction of murder in the first degree notwithstanding his conviction and sentence on murder in the second degree. The Supreme Court of Missouri held that the new statute was not an ex post facto law as the change wrought was simply a matter of procedure.
In the United States Supreme Court, Mr. Justice Miller acknowledged that the State of Missouri had the right to abolish the rule and enact a new one, but "[t]he question here is, Does it deprive the defendant of any right of defence which the law gave him when the act was committed so that as to that offence it is ex post facto?” (Kring v Missouri, 107 US 221, 225, supra.)
In answering this question, he wrote:
"In the case before us the Constitution of Missouri so changes the rule of evidence, that what was conclusive evidence of innocence of the higher grade of murder when the crime was committed, namely, a judicial conviction for a lower grade of homicide, is not received as evidence at all, or, if received, is given no weight in behalf of the offender. It also changes the punishment, for, whereas the law as it stood *65 when the homicide was committed was that, when convicted of murder in the second degree, he could never be tried or punished by death for murder in the first degree, the new law enacts that he may be so punished, notwithstanding the former conviction.” (Supra, p 228.)
"The new Constitution of Missouri does take away what, by the law of the State when the crime was committed, was a good defence to the charge of murder in the first degree.” (Supra, p 229.)
"We are of opinion that any law passed after the commission of an offence which, in the language of Mr. Justice Washington, in United States v Hall, 'in relation to that offence, or its consequences, alters the situation of a party to his disadvantage,’ is an ex post facto law; and in the language of Denio, J., in Hartung v The People, 'No one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offence was committed, and which existed as a law at the time.’” (Supra, p 235.)
Mr. Justice Miller’s decision in Kring came under review by the court on several occasions. On each of those occasions, the facts and principles were reviewed and affirmed. In Hopt v Utah (110 US 574, 589, supra), the court noted that Kring’s "judgement of conviction of murder in the second degree was deprived of all force as evidence to establish his absolute immunity thereafter from punishment for murder in the first degree. This was held to be the deprivation of a substantial right which the accused had at the time the alleged offense was committed.” In Thompson v Missouri (171 US 380, supra), the court affirmed the holding in Kring and noted that the statute in effect at the time of the offense provided the defendant with a complete defense to a conviction of murder in the first degree. That right was deemed substantial and could not be taken away from the accused. And again in Mallet v North Carolina (181 US 589, 595, supra), the court viewed the new statute as depriving Kring’s prior conviction of "all force as evidence to establish his absolute immunity thereafter from punishment for murder in the first degree.”
The sole case to be distinguished from Kring is People v Cignarale (110 NY 23). In that case, the defendant was indicted for murder in the first degree, placed on trial, and at the close of the People’s case he pleaded to murder in the second degree. The plea was accepted, but before sentencing, *66 the defendant, with the consent of the District Attorney, withdrew his plea of guilty and pleaded not guilty to the indictment. He was subsequently retried and convicted of murder in the first degree. The defendant appealed his conviction, claiming that his prior conviction of murder in the second degree was deemed an acquittal of murder in the first degree and, therefore, the present conviction was illegal.
In affirming the conviction, it was held that where the plea has been voluntarily withdrawn, the implied acquittal will not remain as the plea was the only prop which sustained both the conviction and the implied acquittal. The court distinguished the case before it from Kring on the basis of the voluntary withdrawal of the plea by the defendant as opposed to the forced withdrawal in Kring.
In view of the foregoing, the defendant’s motion to dismiss the unresolved counts is granted.