Filed 8/24/20  P. v. Lopez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GINO LOPEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B294244<br>(Super. Ct. No. 16F-03599)<br>(San Luis Obispo County) |

Gino Lopez appeals from the judgment after a jury convicted him of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a); count 2), driving under the influence (DUI) of alcohol and causing injury (Veh. Code,[1] § 23153, subd. (a); count 3), driving with a 0.08 percent or more blood alcohol content (BAC) and causing injury (*id.* at subd. (b); count 4), leaving the scene of an accident (§ 20001, subd. (a); count 5), and driving with a suspended or revoked license (§

_____

    [1] Further unspecified statutory references are to the Vehicle Code.

14601.1, subd. (a); count 6).[2] The jury found true the allegations that Lopez fled the scene of the crime (§ 20001, subd. (a); count 2 enhancement); and that he caused great bodily injury and injury to more than one person (§§ 12022.7, subd. (a), 23558; counts 3 and 4 enhancements). The trial court sentenced him to 13 years eight months in state prison (consecutive sentences of six years for count 2 and five years for the section 20001, subdivision (c) enhancement; eight months for count 3 and one year for the Penal Code section 12022.7, subdivision (a) enhancement and four months for the section 23558 enhancement; and eight months for count 5; and concurrent sentences of eight months for count 4 and one year for both enhancements).

Lopez contends (1) his conviction for count 2 must be reversed because his admission was taken in violation of *Miranda*[3] and (2) the sentence for count 5 must be stayed pursuant to Penal Code section 654. We modify the judgment to stay the sentence for count 5, but otherwise affirm.

**FACTS AND PROCEDURAL HISTORY**

In April 2016, although Lopez's driver's license was suspended from a prior DUI conviction, he decided to drive from Wasco to the coast with three other people. Lopez first drove to Henry Aguilar's house, and together they went to a store and bought beer. They then drove to another house to pick up B.A. and E.R. They all drank beer during the drive.

Lopez stopped in Paso Robles, and they purchased more beer. At this point, Lopez had consumed about four beers.

---

[2] Count 1 was dismissed after the jury was unable to reach a verdict.

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

During the drive from Wasco to Paso Robles, Lopez was driving "really fast." At one point, Aguilar looked at the speedometer, which read, "120 mph." Lopez was also "switching lanes" and "swerving" through traffic.

After stopping in Paso Robles, Lopez continued to drink beer while driving. Aguilar and B.A. testified that Lopez continued driving fast. Aguilar estimated that Lopez was driving "over a hundred" miles per hour. Lopez continued switching lanes and passing other cars on the road. Aguilar told Lopez to "slow down," that he was "going too fast," and that they were "going to crash." Lopez responded, "shut the fuck up," and "don't tell me how to fucking drive."

Lopez came up on a Honda traveling in the same direction in the middle lane at about 65 miles per hour. There was a car to the left of the Honda, a semi-truck traveling about 35 miles per hour ahead and to the right of it, and another car directly in front of the Honda. In his rearview mirror, the driver of the Honda saw Lopez approaching the truck "at a rapid speed." The Honda driver observed that there did not "appear to be any room for [Lopez] to get between" his car and the truck, but Lopez "swerved" in front of his car. Because the lane switch "was very rapid," Lopez "overcorrect[ed]" his steering, and his car "swerved" beneath the trailer of the truck. Lopez's car emerged from beneath the truck and hit a Volvo that was in the center lane.

Before the collision, the driver and the passenger of the Volvo noticed Lopez approaching "at a high rate of speed" of about 85 miles per hour. They commented: "That guy's going too fast," and "I hope he makes it around that truck." Less than one minute later, Lopez hit the side of the Volvo. Upon impact with

the Volvo, E.R. was ejected from Lopez's car and died. B.A. was injured.

Six other witnesses observed Lopez's driving before the collision. All of them testified Lopez was driving fast in the "slow lane." Witnesses estimated he was driving between 85 to 100 miles per hour. Several witnesses also noticed that Lopez was "weaving in and out of traffic" and switching lanes "real quick."

A volunteer EMT and firefighter attended to E.R. and B.A. He heard Lopez or Aguilar say "we got to get out of here." Two witnesses saw Lopez and Aguilar pulling beer containers from the car and throwing them down the hill. Several other witnesses called 911 after observing Lopez and Aguilar "running away" from the accident site.

A highway patrol officer arrived minutes after the accident. Witnesses told him they saw Lopez and Aguilar running south. The officer saw Lopez and Aguilar from a distance, drove to them, and began talking to Lopez.

Officer Gerardo Trejo arrived on scene and interviewed Lopez. Trejo smelled alcohol on Lopez's breath and noticed that his eyes were red and watery. Lopez told Trejo that he was driving "80 to 70 miles" per hour. Trejo noticed a cut on Lopez's forehead. Lopez was taken to the hospital.

Officer Stephanie Buck contacted Lopez at the emergency room. Buck read Lopez his *Miranda* rights verbatim off a card before interviewing him. When asked if Lopez understood the *Miranda* admonitions, Buck answered that she did not "recall off the top of [her] head," but "had he not agreed, [she] wouldn't have proceeded further." When asked if she recalled "giving him the [*Miranda*] admonition," Buck answered

4

that she did not "recall that directly."  But, she remembered telling Officer Scott Peterson, who was taking over the interview, that she had advised Lopez of his *Miranda* rights.  Lopez told Peterson he was driving 90 miles per hour.

Lopez objected to the admission of his statement on the grounds that there was insufficient evidence that he was advised of his *Miranda* rights.  He argued that Buck's testimony that she told Peterson that she advised Lopez was inadmissible hearsay and was insufficient to show he was properly advised. The court overruled the objection, finding that a "new *Miranda* warning [was] not necessary before [the] subsequent interrogation" by Peterson, and that there was sufficient evidence to prove that Buck advised Lopez of his *Miranda* rights.

## DISCUSSION

### *Miranda*

Lopez contends his conviction for gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)) must be reversed because the trial court erred when it admitted his statement that he was driving 90 miles per hour.  Lopez argues the prosecution did not prove he voluntarily and knowingly waived his *Miranda* rights.  The Attorney General contends Lopez forfeited the argument because he did not object to the *Miranda* violations on those grounds at trial.

We agree Lopez forfeited his claim.  "[U]nless a defendant asserts in the trial court a specific ground for suppression of [their] statements to police under *Miranda*, that ground is forfeited on appeal, even if the defendant asserted other arguments under the same decision.  (*People v. Polk* (2010) 190 Cal.App.4th 1183, 1194 [appellant forfeited claim that she was not given proper *Miranda* warnings because her sole claim of

coercion was "simply not sufficient to preserve the . . . issue . . . because they did not call to the attention of the trial court the substantive inadequacy of the warnings"].)

Lopez did not preserve the claim he makes here because the only issue raised at trial was whether Lopez was properly advised, not whether his waiver was valid. We will not consider claims of error ""'"where an objection could have been, but was not presented to the lower court."'"" (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590.)

In any event, any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 21-22; *People v. Samayoa* (1997) 15 Cal.4th 795, 831.) Here, the jury was instructed that to convict Lopez for gross vehicular manslaughter while intoxicated, the prosecution must prove, among other things, that Lopez committed an "infraction with gross negligence." The prosecution alleged Lopez violated section 22107 and 22349. The jury was instructed that pursuant to section 22107, "no person shall turn a vehicle from a direct course . . . until such movement can be made with reasonable safety." They were instructed that pursuant to section 22349, "no person may drive a vehicle upon a highway at a speed greater than 65 miles per hour."

Even without Lopez's statement, there was overwhelming evidence that he was driving at a high rate of speed and making illegal lane changes in violation of sections 22107 and 22349, and that his driving amounted to gross negligence. Aguilar and B.A. testified that Lopez was driving "really fast" and "swerving" through traffic during the entire car ride. Aguilar testified the speedometer read 120 miles per hour at one point, and estimated Lopez was driving over 100 miles per

6

hour before the collision.  Nine other witnesses also testified that Lopez was driving too fast.  Several witnesses testified he was driving between 85 to 100 miles per hour in the "slow lane" of traffic.  Witnesses also testified that Lopez was changing lanes in a dangerous manner.  The driver of the Honda observed there was no room between his car and the truck to safely change lanes, but Lopez did so and lost control of his vehicle.  Moreover, Lopez admitted to Trejo that he was driving "80 to 70" miles per hour.  Under these facts, any error admitting Lopez statement was harmless beyond a reasonable doubt.

### *Penal Code Section 654*

Lopez argues that the eight-month term for count 5 (fleeing the scene of the crime, § 20001, subd. (a)) must be stayed pursuant to Penal Code section 654.  We agree.

Penal Code section 654 prohibits multiple punishments for a single act.  Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of Penal Code section 654 depends on "the intent and objective of the actor."  (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.)  If multiple offenses were "incident to one objective," the defendant may be punished for only one.  (*Ibid*.)

The trial court should have stayed the sentence for count 5.  "[T]here can be only one conviction for leaving the scene of an accident," even where an accident results in the injury of more than one person.  (*People v. Calles* (2012) 209 Cal.App.4th 1200, 1217 (*Calles*); *People v. Newton* (2007) 155 Cal.App.4th 1000, 1002.)  Lopez's act of leaving the scene of the accident was not a separate act with a separate objective "when compared to [the enhancement for fleeing the scene of the crime] alleged in

7

count [2].  There was only one act of leaving the scene of an accident."  (*Calles*, at p. 1217.)

Penal Code section 654, subdivision (a) provides that when an act is punishable in different ways by different provisions of law it shall be punished "under the provision that provides for the longest potential term of imprisonment."  The sentence for the enhancement on count 2 provides a longer potential term of imprisonment than the sentence for count 5.  Thus, the sentence for count 5 must be stayed.  (*Calles*, *supra*, 209 Cal.App.4th at p. 1217.)

## DISPOSITION

The judgment is modified to stay the eight-month sentence for count 5, leaving the scene of an accident (Veh. Code, § 20001, subd. (a)), pursuant to Penal Code section 654.  The clerk of the superior court is directed to amend the abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:



GILBERT, P. J.



YEGAN, J.

8

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

———————————————

David Ross Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.