[No. B058383. Second Dist., Div. Five. Sept. 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES EDWARD WILLIAMS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

## COUNSEL

Robert F. Howell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Linda C. Johnson and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GRIGNON, J.**—Defendant and appellant Charles Edward Williams appeals from a judgment after a jury trial in which he was convicted of three counts of second degree robbery and two counts of grand theft person with findings that two of the victims were sixty-five years of age or older, that defendant intentionally inflicted great bodily injury on one of the victims, and that he had suffered three prior serious felony convictions. On appeal, he contends: (1) trial counsel was ineffective in failing to suppress pretrial and in-court identifications of him as the perpetrator; (2) the trial court erred in denying his motion for substitute counsel to present a motion for new trial based on ineffective assistance of counsel; (3) there is insufficient evidence to support

a conviction for one of the counts of grand theft person; (4) the trial court erred in imposing a sentence for the elderly victim enhancement on a subordinate nonviolent felony; and (5) the trial court erred in failing to stay the sentences for two counts of grand theft person pursuant to Penal Code section 654. In the published portion of the opinion, we reverse the conviction of one count of grand theft person and conclude that Penal Code section 654 is inapplicable to the sentence imposed in this case. In the unpublished portion of the opinion, we conclude trial counsel was not ineffective and the trial court did not err in denying defendant's motion for substitute counsel and imposing a sentence for the elderly victim enhancement. We affirm in part and reverse in part.

### PROCEDURAL BACKGROUND

Defendant was convicted in count 1 of grand theft person of Eileen Crowley on May 28, 1990, in violation of Penal Code section 487, subdivision 2; in count 2 of second degree robbery of Patricia Bettencourt on May 28, 1990, in violation of Penal Code section 211; in count 3 of grand theft person of Francis Cirrencione on April 30, 1990, in violation of Penal Code section 487, subdivision 2; in count 4 of second degree robbery of Eliette Strasbourg on April 30, 1990, in violation of Penal Code section 211; and in count 5 of second degree robbery of Theba Heimer on May 26, 1990, in violation of Penal Code section 211. The jury found to be true the allegations that Strasbourg and Heimer were 65 years of age or older within the meaning of Penal Code section 667.9, defendant intentionally inflicted great bodily injury on Strasbourg within the meaning of Penal Code section 12022.7, and defendant had suffered three prior serious felony convictions within the meaning of Penal Code section 667, subdivision (a).

Defendant was sentenced to the upper term of five years on count 4 with an additional three years for the great bodily injury enhancement and an additional two years for the elderly victim enhancement. He was sentenced to consecutive one-third the middle term sentences on count 1 (eight months), count 2 (one year), count 3 (eight months), and count 5 (one year). Defendant was further sentenced to an additional consecutive two years for the elderly victim enhancement on count 5 and an additional consecutive fifteen years for the three prior serious felony conviction enhancements. Defendant's prison sentence totalled thirty years and four months.

### FACTS

*April 30, 1990*

At approximately 5 p.m. on April 30, 1990, 72-year-old Frances Cirrencione and 68-year-old Eliette Strasbourg had just completed their shopping

at a Von's market on Third Street. They returned with their groceries to Cirrencione's car. Cirrencione put her groceries on the backseat of the car, threw her purse onto the front passenger seat, sat down in the driver's seat, and opened the passenger door. Defendant approached her, pushed her back in her seat, and grabbed her purse from the passenger seat. Cirrencione got out of the car and screamed for help.

Defendant went around the back of the car to the passenger side where Strasbourg was standing. Strasbourg was holding a purse. Strasbourg saw defendant approach and she began to run. Defendant ran after her, grabbed her purse, and pushed her. She fell and broke her kneecap.

Jane Raymond heard Cirrencione screaming and saw defendant steal Strasbourg's purse. Raymond saw defendant leave in a blue gray New Yorker or Lincoln automobile with license No. 1MIS375.

At trial, Cirrencione and Strasbourg identified defendant as the person who stole their purses. Raymond testified that defendant resembled the thief somewhat, but Raymond was not 100 percent certain. Cirrencione also identified defendant at a physical lineup on September 5, 1990. Strasbourg identified someone other than defendant at a photographic lineup on August 10, 1990, but identified defendant at a physical lineup on September 5, 1990. Raymond identified defendant at a photographic lineup on June 11, 1990, and at a physical lineup on June 21, 1990.[1]

*May 26, 1990*

At approximately noon on May 26, 1990, 69-year-old Theba Heimer drove to Jay's Market on Pico Boulevard and parked her car in the parking lot. She began to walk to the store carrying a purse. Defendant ran up to her, grabbed her purse, and knocked her down. Defendant left in a large dark car with license No. 1MIS375. Heimer was unable to identify the robber.

Delilah Gibson heard Heimer scream and saw defendant throw Heimer's purse into a dark gray Lincoln automobile and drive off. Gibson identified defendant as the robber at trial and from a photographic lineup on June 6, 1990. She was unable to identify him at a physical lineup on June 21, 1990.

---

[1]Cirrencione did not testify at defendant's preliminary hearing and was not shown a photographic display. At the physical lineup, she indicated she was 80 percent sure of her identification of defendant. Strasbourg testified at defendant's preliminary hearing on October 1, 1990. She was not asked to identify defendant, although she did describe her attacker. At the photographic lineup, Raymond indicated defendant looked "a little like the person." At the preliminary hearing, she indicated defendant looked like the purse snatcher, but she was not 100 percent certain.

At the preliminary hearing on October 1, 1990, she testified defendant looked like the purse snatcher.

*May 28, 1990*

At approximately 1 p.m. on May 28, 1990, Eileen Crowley and Patricia Bettencourt went to Wherehouse Records on Sepulveda Boulevard to return some tapes. As they were walking towards the store, a grayish Lincoln automobile pulled up beside them. Someone yelled, "Open the trunk." Defendant approached Crowley and took her purse. Bettencourt started to run. Defendant then turned around, overpowered Bettencourt, knocked her down, and dragged her a short distance. Bettencourt and defendant struggled for the purse. Defendant took her purse and fled in a Lincoln automobile. Crowley did not identify defendant. Bettencourt identified defendant at trial and at a photographic lineup on June 5, 1990. At the photographic lineup, Bettencourt said she was 70 percent sure of her identification of defendant. At trial, she stated she was 100 percent sure of her in-court identification.[2]

Willard Davidson saw defendant take Bettencourt's purse and get into a car with license No. 1MIS375. Davidson identified defendant at a photographic lineup on August 15, 1990, and a physical lineup on September 5, 1990.[3]

*Defense*

Defendant was arrested on June 2, 1990, driving a gray Lincoln automobile with license No. 1MIS375, which belonged to his mother. This vehicle was reported stolen on April 28, 1990, and recovered on May 1, 1990. Defendant's mother testified that the car was also stolen on May 26, 1990, and recovered on June 2, 1990. She stated she did not report this theft to the police and personally recovered the car on a nearby street. She did state that she believed one of her sons had reported the theft. She also testified defendant had worked at her family's tailoring shop all day on May 26, 1990, and May 28, 1990. This alibi was corroborated by an employee of the shop.

On June 4, 1990, defendant was interviewed by the police about the May 28, 1990, thefts. Defendant initially stated he had loaned the car to a friend. He later stated he was a passenger in the car. Finally, he told the police he was driving the car, his friend committed the crime, and defendant got $50.

---

[2]Bettencourt was not asked to identify defendant when she testified at the preliminary hearing.

[3]Davidson identified defendant at the preliminary hearing.

Discussion

## I. *Sufficiency of the Evidence Grand Theft Person—Cirrencione*

■ Defendant contends the evidence is insufficient to support his conviction for grand theft person of Cirrencione in count 3. He argues that Cirrencione's purse was not taken from her person but rather from the car seat beside her. In reviewing the sufficiency of the evidence on appeal, the appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

Grand theft is committed when property is taken from the person of another. (Pen. Code, § 487, subd. 2.) "[T]he crime of theft from the person contemplates that '. . . the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession . . . or . . . *held or carried in the hands, or by other means, upon the person*; . . . [the crime] was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control or possession of the owner while so laid away from his person and out of his hands.' " (*In re George B.* (1991) 228 Cal.App.3d 1088, 1091-1092 [279 Cal.Rptr. 388], citing *People* v. *McElroy* (1897) 116 Cal. 583, 586 [48 P. 718], italics in original.)[4] In *McElroy*, the Supreme Court held that the theft of money from the pants pocket of a victim who had removed his pants and was sleeping with his head resting on them as a pillow did not constitute grand theft person; the pants had been removed from the victim's person and laid aside. In *George B.*, the Court of Appeal held that the theft of a bag of groceries from a shopping cart as the victim was pushing the cart in the parking lot of a market constituted grand theft person; the victim carried the bag by means of the shopping cart; the contents of the shopping cart were attached to the victim through the medium of the shopping cart, which the victim was both in physical contact with and in control of.

The evidence is undisputed that at the time defendant took Cirrencione's purse from her, the purse was lying on the car seat. The purse was not upon Cirrencione's person, attached to her in any way, or carried by her. Cirrencione had laid the purse aside, although it remained in her immediate

---

[4]Compare the elements of robbery set forth in Penal Code section 211, which require a felonious taking from the victim's person *or immediate presence.*

presence and was under her actual control. Under the authority of *McElroy*, we are compelled to conclude that the evidence is insufficient as a matter of law to sustain the conviction for grand theft person in count 3. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

Respondent cites a number of cases from other jurisdictions with similar statutes which have concluded under similar circumstances that the crime constitutes grand theft person.[5] Although these cases are persuasive and we might arrive at a different conclusion if we were working on a clean slate, we are compelled by stare decisis to conclude that property taken from the actual and immediate control of the victim is not taken from "the person" of the victim within the meaning of Penal Code section 487, subdivision 2, unless the property is physically attached to the victim in some manner. (See, e.g., CALJIC No. 14.23, "the property must be either on the body or in the clothing being worn or in a receptacle being carried by the person from whom it is taken.") Accordingly, the conviction for grand theft person in count 3 must be reversed.[6]

## II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V.   *Sentencing*
### *Penal Code section 654*

■ Defendant contends the trial court erred in failing to stay, pursuant to Penal Code section 654, the sentences imposed on counts 1 and 3 for grand theft person. Specifically, he contends that the grand theft person of Crowley in count 1 and the robbery of Bettencourt in count 2 constituted a single course of conduct with a single intent and objective. He makes the same contention with respect to the grand theft person of Cirrencione in count 3 and the robbery of Strasbourg in count 4. Defendant argues that grand theft person is not a crime of violence but rather a crime committed against property rights. Accordingly, he concludes that the exception to

---

[5]See, e.g., *State* v. *Tramble* (1985) 144 Ariz. 48 [695 P.2d 737, 740-741]; *State* v. *Blow* (1975) 132 N.J.Super. 487 [334 A.2d 341, 342-343]; *State* v. *Jones* (Mo.Ct.App. 1973) 499 S.W.2d 236, 237-240; *State* v. *Kobylasz* (1951) 242 Iowa 1161 [47 N.W.2d 167, 170]; see also *People* v. *Evans* (1980) 44 Colo.App. 288 [612 P.2d 1153, 1156]; *Prigmore* v. *State* (Tenn.Crim.App. 1977) 565 S.W.2d 897, 898-899; compare Annotation (1976) 74 A.L.R. 3d 271 and cases cited therein noting a split of authority on this issue.

[6]Although the grand theft person conviction could be reduced to a misdemeanor petty theft conviction, respondent has not raised this issue on appeal.

*See footnote, *ante*, page 1465.

Penal Code section 654, permitting multiple punishments where there are multiple victims of a violent act or multiple crimes of violence, is not applicable. Since we have already concluded defendant's conviction of grand theft person in count 3 must be reversed, we need only consider this contention in connection with counts 1 and 2.

Penal Code section 654 states in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one. . . ." ■ "The proscription against double punishment in [Penal Code] section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of [Penal Code] section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839].)

■ If a defendant "entertain[s] multiple criminal objectives which [are] independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations share[] common acts or [are] parts of an otherwise indivisible course of conduct." (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].) "Whether [a defendant] maintain[s] multiple criminal objectives is determined under all the circumstances and is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it." (*People* v. *Goodall* (1982) 131 Cal.App.3d 129, 148 [182 Cal.Rptr. 243].)

■ An exception to the applicability of Penal Code section 654 is made where a crime of violence is committed against more than one victim. (*Neal* v. *State of California, supra,* 55 Cal.2d at pp. 20-21.) "Where, however, the offenses arising out of the same transaction are not crimes of violence but involve crimes against property interests of several persons, this court has recognized that only single punishment is permissible." (*People* v. *Bauer, supra,* 1 Cal.3d at p. 378.) Thus, a defendant who robs a jewelry store in the presence of two salespersons is guilty of and may be punished for two robberies, while a defendant who enters a residence and takes property belonging to two individuals may be punished for only a single burglary. (*Ibid.*)

■ In this case, it is clear defendant could have been separately punished if he had been convicted of robbing both individuals. The question remains as to whether the fact that one of the convictions is for grand theft person instead of robbery compels a different result. We conclude that under the facts presented herein it does not.

The facts of *People* v. *Taylor* (1971) 15 Cal.App.3d 349 [93 Cal.Rptr. 257] are very similar to the facts involved here. In *Taylor*, the defendant attempted to remove the wallet from the pocket of a man sleeping in a movie theater. He was interrupted by another patron of the theater. Defendant assaulted the interfering patron with a knife and ordered him to mind his own business. Defendant was subsequently convicted of attempted grand theft person of the sleeping patron and assault with a deadly weapon of the interfering patron. This district held that Penal Code section 654 was inapplicable because the crimes had been committed against different victims. (15 Cal.App.3d at p. 353; see also *People* v. *Szarvas* (1983) 142 Cal.App.3d 511, 522 [191 Cal.Rptr. 117], where this district implied that the multiple victim exception to Penal Code section 654 was applicable to an indivisible course of conduct resulting in grand thefts from multiple victims.)

In addition, several cases have held that the statutory prohibition against multiple punishment is inapplicable to situations where multiple burglaries are committed at the same time and in the same building. In *People* v. *James* (1977) 19 Cal.3d 99 [137 Cal.Rptr. 447, 561 P.2d 1135], a defendant was separately punishable for burglaries of three office suites in the same commercial building committed in the same course of conduct. (*Id.* at pp. 119-120.) In *People* v. *O'Keefe* (1990) 222 Cal.App.3d 517, 522 [271 Cal.Rptr. 769], a defendant was separately punishable for burglaries of individual rooms in a college dormitory. In *People* v. *Bowman* (1989) 210 Cal.App.3d 443 [258 Cal.Rptr. 358], a defendant was separately punishable for eight burglaries of buildings and vehicles in a car dealership committed as part of an indivisible course of conduct during a single night. (210 Cal.App.3d at pp. 448-449.)

In this case, defendant formed the separate felonious intents to steal the purses of both Crowley and Bettencourt. He engaged in separate acts to accomplish his separate intents. The thefts were not incidental to but independent of each other, although committed at the same time. Defendant is clearly more culpable than a defendant who takes the purse of a single victim and is appropriately punished for each offense. We conclude Penal Code section 654 is not applicable and the trial court did not err in sentencing defendant to a consecutive unstayed sentence for both count 1 and count 2.

## DISPOSITION

The judgment of conviction of grand theft person in count 3 is reversed. The sentence is modified by striking the eight months imposed on count 3, reducing the total sentence to twenty-nine years and eight months. In all other respects, the judgment is affirmed.

Boren, J., concurred.

**TURNER, P. J.**—I concur in the majority opinion except for that portion of the disposition which dismisses the felonious grand theft conviction under count 3. Although defendant may not be convicted of grand theft person, the act of taking the purse was a petty theft, a lesser included offense of grand theft person. (*People* v. *McElroy* (1897) 116 Cal. 583, 584 [48 P. 718].) Therefore, I would reduce the offense to petty theft pursuant to Penal Code section 1260 and remand for resentencing on the misdemeanor count.

A petition for a rehearing was denied October 22, 1992, and respondent's petition for review by the Supreme Court was denied December 30, 1992. Panelli, J., of the opinion that the petition should be granted.