Filed 12/20/13  P. v. Wilson CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUCIOUS WILSON,<br><br>    Defendant and Appellant. | B241925<br><br>(Los Angeles County<br>Super. Ct. No. VA121164) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

Lucious Wilson appeals from the judgment entered following his convictions by jury on count 1 – assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and count 2 – exhibiting a deadly weapon (Pen. Code, § 417.8, subd. (a)), with admissions he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)) and a prior serious felony conviction (Pen. Code, § 667, subd. (a)), and served two prior prison terms (Pen. Code, § 667.5, subd. (b)).[1] The court sentenced appellant to prison for 13 years. We affirm the judgment.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence, the sufficiency of which is undisputed, established that on August 11, 2011, Evelia Castanon worked at a McDonald's restaurant in Lakewood. She phoned Valerie Valdez, the manager, and told her appellant, Castanon's boyfriend, was following Castanon. Castanon arrived at work and told Valdez that she was leaving appellant because he was abusive and she was obtaining a restraining order. Valdez testified Castanon told her that something bad was going to happen and that appellant had said "it's going to be over today."

Appellant entered the restaurant. Castanon went to the back of the restaurant. Appellant told customers they needed to leave because something bad was going to happen. Valdez called 911. She was standing near an opening near the registers. Appellant shoved her to go past her. Appellant said he wanted to talk to Castanon, she had made him homeless, he did not want to hurt anyone, and he was only going to hurt himself.

Edward Romero was working at a cash register in the restaurant. Romero grabbed appellant from behind and held him around the waist. Appellant pulled out a knife and Valdez told Romero to release appellant because he had a knife. Romero released appellant and backed up, and appellant said something to the customers. Appellant then

---

[1] Following a court trial, the trial court found appellant was legally sane at the time of the present offenses.

2

approached within about four feet of Romero while holding two knives in front of appellant at waist level. Appellant asked Romero if he felt tough or brave, then appellant pointed the knives at Romero. Romero said he did not want anyone to get hurt and he was trying to protect everyone. Appellant backed away and began talking to the customers. Romero jumped over the counter and stood with coworkers.

At various times, appellant pointed the knives at his heart, cut his neck and arms, stabbed himself in the stomach, and threw his blood throughout the restaurant. Appellant said he loved Castanon, she had left him, he wanted to kill himself, and he wanted to show his love for Castanon. Appellant went towards the back of the restaurant where Castanon and Valdez were. Appellant said something to Castanon and Valdez while pointing the knives in their direction and taunting them.

The restaurant was located in a Walmart store. Jonas Pena, a Walmart loss prevention agent, distracted appellant and signaled to Valdez and Castanon to flee into the Walmart. The women did so. Castanon tried to return, but Pena told others to take her away. Appellant put the two knives to his throat, said he was going to kill himself, and told people to release Castanon and not to hurt her. Appellant also menacingly displayed the knives towards others.

Uniformed Los Angeles County sheriff's deputies arrived and saw appellant yelling, and dangerously waving the knives in the restaurant. Deputies repeatedly yelled to appellant to drop the knives. Appellant, using profanity, told deputies they would have to shoot him. Appellant also said they would have to kill him. Appellant sat in a booth and held the knives like scissors to his throat. Deputies repeatedly told appellant to drop the knives but he failed to comply. A deputy shot appellant with bean bag ammunition, appellant dropped the knives, and deputies took him into custody. Appellant, using profanity, asked why he was not dead.

## ISSUE

Appellant claims multiple punishment on counts 1 and 2 violated Penal Code section 654.

3

### DISCUSSION

*Penal Code Section 654 Did Not Bar Multiple Punishment on Counts 1 and 2.*

During the June 7, 2012 sentencing hearing, the court indicated the offense of exhibiting a deadly weapon (count 2) arose "out of the same course of events and the continuous conduct" of the offense of assault with a deadly weapon (count 1). The court imposed a prison sentence of 13 years on count 1, with a concurrent term of two years on count 2.

Appellant claims multiple punishment on counts 1 and 2 violated Penal Code section 654. We reject the claim. Penal Code section 654, as interpreted by our Supreme Court, prohibits multiple punishment for offenses committed during an indivisible transaction. Whether a course of conduct is indivisible depends on the intent and objective of the actor. (*People v. Perez* (1979) 23 Cal.3d 545, 551 (*Perez*).) If all offenses are incident to one objective, the defendant may not be punished for more than one. However, if the defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the defendant may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. (Cf. *People v. Bradley* (2003) 111 Cal.App.4th 765, 769, fn. 3.)

Whether Penal Code section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. Its findings will not be reversed on appeal if there is any substantial evidence to support them. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) We view the evidence in the light most favorable to respondent and presume in support of the sentence the existence of every fact the trial court reasonably could have deduced from the evidence. (*People v. Tarris* (2009) 180 Cal.App.4th 612, 627.)

4

In the present case, there was substantial evidence, and the trial court reasonably could have concluded, as follows. Appellant committed assault[2] with a deadly weapon against Romero (count 1) when appellant approached within a few feet of Romero with knives pointing at Romero. Appellant had the requisite mental state for assault, i.e., he had the criminal intent and objective of committing an intentional act with actual knowledge of facts sufficient to establish that the act by its nature would probably and directly result in the application of physical force against *Romero*. (Cf. *People v. Williams* (2001) 26 Cal.4th 779, 782, 790.)

Appellant's motive for assaulting Romero was that Romero was preventing appellant from getting past Valdez so appellant could approach Castanon and talk with her, hurt her, and/or hurt himself in Castanon's presence. The assault on Romero ended once appellant backed away and Romero jumped over the counter and retreated to his coworkers. Appellant did not then have a criminal intent or objective towards deputies, because they had not yet arrived.

The deputies arrived later and, by the time they did, appellant knew he had battered Valdez, and had assaulted Romero with a deadly weapon. That is, appellant knew deputies were there to detain and/or arrest appellant. Appellant dangerously waved the knives despite the deputies' repeated commands that he drop them, and appellant told deputies they would have to kill him. Appellant later sat in a booth, held the knives to his throat, deputies told appellant to drop the knives, and he failed to comply. Appellant's actions constituted the crime of exhibiting a deadly weapon in violation of Penal Code section 417.8 (count 2).[3] Appellant committed that offense with an independent criminal

---

[2]     Penal Code section 240 provides, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

[3]     Penal Code section 417.8 provides, "Every person who draws or exhibits any firearm, whether loaded or unloaded, or other deadly weapon, with the intent to resist or prevent the arrest or detention of himself or another by a peace officer shall be imprisoned . . . ."

intent and objective, i.e., an "intent to resist or prevent the arrest or detention of [appellant] *by a peace officer*" (italics added) within the meaning of that section.

Appellant's motive for committing the violation of Penal Code section 417.8 was he wanted deputies to kill him. Appellant did not then have a criminal intent and objective concerning Romero, but concerning the deputies. In sum, appellant had multiple independent criminal objectives when committing the offenses at issue in counts 1 and 2. Penal Code section 654 did not bar multiple punishment on those counts.

Appellant argues he had a "single intent and objective" when committing the offenses at issue in counts 1 and 2, i.e., "appellant intended (and expressed that intent), and attempted, to cause his death that day, at his own hands with the knives." He also argues both offenses " 'were merely incidental to, or were the means of accomplishing or facilitating one objective' – i.e., appellant's death . . . .' "

However, the intent and objective posited by appellant are too broad and amorphous to determine whether Penal Code section 654 applies. (Cf. *Perez, supra*, 23 Cal.3d at p. 552.) The requisite intent and objective for purposes of Penal Code section 654 analysis are a *criminal* intent and objective. (*People v. Ratcliff* (1981) 124 Cal.App.3d 808, 816-817.) Neither suicide nor attempted suicide is a crime. (*In re Joseph G.* (1983) 34 Cal.3d 429, 433.) Appellant's argument fails.[4]

---

[4]     In light of our analysis, there is no need to reach the issue of whether Penal Code section 654 was inapplicable for the additional reasons the multiple victim exception applied (see *People v. Williams* (1992) 9 Cal.App.4th 1465, 1473) and/or because the predicate offenses were divisible in time (see *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.)

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

7