Filed 10/20/21  P. v. Painia CA2/4

Opinion after recalling remittitur

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B301726 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA468072) |
| v. | |
| MANUEL PAINIA | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Lori A. Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

Dissatisfied with repairs performed on his vehicle, appellant Manuel Painia entered a repair shop and demanded a refund from the shop owner, pointed a gun at him, threatened him, then moved outside the shop and fired the gun into the air. A jury convicted appellant on five counts arising from the incident, including assault with a firearm and discharge of a firearm. On appeal, appellant challenges the court's sentencing on the discharge count, arguing that the court erred in finding a separate and distinct act for purposes of Penal Code section 654.[1] He also contends the trial court failed to recognize its discretion under the three strikes law to impose a concurrent sentence on that count. Lastly, he argues that the court abused its discretion in refusing to strike his prior strike convictions. We affirm.

## PROCEDURAL HISTORY

An information filed in 2018 charged appellant with assault with a semi-automatic firearm (§ 245, subd. (b); count one), criminal threats (§ 422, subd. (a); count two), discharge of a firearm with gross negligence (§ 246.3, subd. (a); count three), possession of a firearm by a felon with four priors (§ 29800, subd. (a)(1); count four), and unlawful possession of ammunition (§ 30305, subd. (a)(1); count five[2]). The information further alleged appellant personally used a firearm as to counts one and two (§ 12022.5), suffered two prior serious or violent felony convictions within the meaning of the three strikes law (§§ 667,

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2] The information omitted count five and designated the unlawful possession of ammunition charge as count six. The trial court later designated the count as count five for clarity during trial.

subds. (b)-(j), 1170.12, subd. (b)), suffered two prior serious felony convictions (§ 667, subd. (a)(1); counts one through three), and served two prior prison terms (§ 667.5, subd. (b)).

Appellant's first trial ended in a mistrial after the court found the jury was deadlocked. On retrial, the jury found appellant guilty as charged on all five counts and further found true the allegation that appellant personally used a firearm.

Following a court trial on appellant's prior convictions, the court found true the allegations regarding appellant's two prior strike convictions. The court found the People failed to prove the allegations regarding prior prison convictions under section 667.5, subdivision (b), and therefore struck them. The court denied appellant's *Romero*[3] motion to strike his prior strikes.

The court sentenced appellant to a total of 56 years to life in prison as follows: on count one, the court imposed the upper term of nine years, tripled pursuant to section 667, subdivision (e)(2)(a), plus four years for the firearm enhancement under section 12022.5 to run consecutively, for a total of 31 years. On count two, the court imposed a term of 25 years to life pursuant to the three strikes law, plus four years for the firearm enhancement. The court stayed the sentence on count two pursuant to section 654. On count three, the court imposed a consecutive term of 25 years to life pursuant to the three strikes law. On each of counts four and five, the court imposed three-year terms, doubled pursuant to section 1170.12, and stayed pursuant to section 654. The court struck the five-year prior conviction enhancements under section 667, subdivision (a) as to counts one through three. Appellant timely appealed.

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

3

## FACTUAL BACKGROUND

### I. Prosecution Evidence

Andre Francois owned an auto repair shop called Islander Auto Repair, at the corner of West 46th Street and Western Avenue in Los Angeles. He also owned the restaurant next door. Francois testified that he had seen appellant two or three times prior to the incident and worked on appellant's car about two months earlier. The morning of May 11, 2018, appellant came into the shop. He was accompanied by Chris Thompson, whom Francois knew because Thompson grew up down the street from the shop. Francois testified that he first saw appellant that morning riding in his motorized wheelchair, coming through the alley behind the shop. Francois approached appellant at the front of the shop, and appellant said that Francois owed him over $800 and needed to pay him today. Appellant showed him a receipt from car repairs done at another shop, stood up from the wheelchair, and said, "I need my fucking money today, otherwise I'm going to fuck up the shop."

Francois smelled alcohol on appellant, so Francois told appellant to "come back another time with the right state of mind and we [*sic*] talk about this." Appellant grew angrier and said, "You [*sic*] going to fucking give me my money today or I'm going to blow the motherfucker up." Francois testified that he did not pay attention to these statements; instead, he walked back into the shop. Appellant continued to stand on the sidewalk, swearing. Francois told another mechanic, "Don't worry about it. He's drinking." Appellant and Thompson left and Francois went back to work.

Appellant returned about 10 to 15 minutes later. He was again accompanied by Thompson, who was now on a bicycle.

4

Francois testified that he approached appellant and asked him what happened. Appellant pulled a black handgun out of his pocket, pointed it at Francois's head, and said, "motherfucker, I need my motherfucking money now. I'll blow your fucking head off." Francois recalled that the gun was a few inches from him at the time. Francois put his hands up and told appellant, "you don't have to do this." Then Francois heard Thompson say something to appellant, causing appellant to turn away. As soon as this happened, Francois ran out of the shop, toward Western Avenue.

When Francois got to the corner, he called 911. The prosecution played the call for the jury, placed at 9:08 a.m. on May 11, 2018. Francois told the 911 operator that a man in a wheelchair pointed a gun at his head. As he continued to give details of the incident, he told the operator that appellant was "shooting right now!" When the operator asked who the assailant was shooting at, Francois responded, "I don't know," and later that he was shooting "at the cars."

Francois testified that while he was on the phone with 911, he could see appellant on the sidewalk "pointing the gun at everything" and also pointing it back inside the shop. Francois crossed 46th street and lost sight of appellant as he hid. When he looked again, appellant was in front of the restaurant, moving toward Western in his wheelchair, still holding the gun. Then appellant raised his arm and fired the gun. As Francois described the shooting, appellant was not pointing up in the air, but was pointing across the street. The prosecution played surveillance video from the auto shop that showed the assailant firing into the air.

5

Francois saw appellant fire one shot. Afterward, he saw Thompson take off running and appellant head toward the alley. Francois then flagged down the police. He testified that he believed people were walking on the street at the time of the incident, and the nearby market was also open.

Two mechanics working that morning at the auto repair shop also testified. Lavonne Phillips stated that he had seen appellant come into the shop several times before. That day, Phillips saw appellant come into the shop in his wheelchair, seeming angry. Appellant was going up and down the sidewalk in his "scooter wheelchair" yelling, "Andre, I want my $900." Phillips testified that appellant also threatened Francois. Appellant was accompanied by Thompson; at one point, appellant told Thompson, "Go get the gun." Phillips saw Thompson walk toward the alley, then return with a gun. Thompson passed the gun to appellant and appellant said, "We gonna blast these motherfuckers."

Phillips hid toward the back of the shop when he heard appellant say he was going to "blast" people; he also called 911. In the 911 call, which was played for the jury, Phillips reported that a man in a wheelchair pulled out a gun, and was "threatening a guy." Phillips also said that the man pointed the gun and "threatened the guys here . . . say he gon' shoot 'em." Phillips testified that from his hiding spot, he saw appellant and Thompson leave the shop, heading toward Western Avenue. Then Phillips heard a gunshot. He did not see who fired the gun, he just saw people scatter.

Dougal Toney, Francois's cousin, was also working at the shop that morning. After he opened the shop that morning, he saw appellant in the alley, holding a bottle of cognac. Later,

6

Toney saw appellant in the shop, in his wheelchair, approaching Francois. Toney testified that he could not hear their conversation.

After about a minute, appellant left, accompanied by Thompson. They returned about five minutes later. Toney saw that appellant was holding a file with papers and a handgun. Appellant handed the papers to Francois, then said, "you going to give me my money or take this gun." Toney understood that statement as a threat. He also saw appellant point the gun at Francois's face.

Toney testified that Francois walked away toward Western Avenue. Then Toney heard appellant tell Thompson that he was going to "light up the place." Toney saw appellant and Thompson moving toward Western Avenue. He saw appellant standing near the edge of the shop and the restaurant; then appellant fired the gun straight up in the air. Toney could not recall if there were any pedestrians nearby at that time.

Officers from the Los Angeles Police Department responded to the scene shortly after the shooting. Officer Gabriel Gonzales testified that as he and his partner arrived, he saw a person matching the description of the suspect (whom he identified as appellant at trial) traveling down the street in a wheelchair. He took appellant into custody. The officers did not find any weapons on appellant or in the wheelchair.[4] Gonzales then proceeded to the corner and spoke to Francois, who pointed to appellant and said, "hey, that's him that shot."

---

[4]The officers also found and detained Thompson about a block away in the alley.

7

Gonzales testified that appellant appeared intoxicated at the time of his arrest. Appellant was able to get out of the wheelchair and walk, but his speech was slurred, his eyes were red, and he smelled of alcohol.

Gonzales found a handgun in the alley behind the repair shop. The ammunition inside the gun was the same type as a spent shell casing he found on the sidewalk in front of the auto repair shop. He also spoke to two mechanics inside the shop. Gonzales did not see anyone else walking on that side of the street during his investigation. He also noted that there was a middle school across the street.

## II. Defense Evidence

Appellant testified that his fiancée lived near the repair shop and he had seen Francois around the neighborhood in the past. Appellant paid the auto shop $1,600 to fix his car, but his fiancée made all of the arrangements; he never dealt with the shop directly. After they got the car back, it started having problems right away. Appellant had the car fixed by another shop, which cost $ 900. Although he was dissatisfied with the repair, he claimed he never spoke to Francois or asked for his money back. He also denied that he was at the shop on the day of the incident.

Appellant acknowledged using a wheelchair at times because of injuries to his knees. At the time he was arrested, he was in his wheelchair on Western Avenue, coming from a restaurant called Master Burger, heading back to his fiancée's place. He denied drinking that morning and claimed he did not have a handgun. He also denied having any argument with Francois, threatening anyone, or shooting a gun. He testified that he was not the person pictured on the video shooting the

8

gun.

Appellant admitted that he was convicted of a felony in 1997. He was also convicted of felony domestic violence causing injury in 2010, but testified that the conviction was overturned. He was also convicted in 2016 of felony corporal injury to a spouse with a prior conviction for the same offense.

## DISCUSSION

### I. Section 654

Appellant contends that the court should have stayed the imposition of his sentence on count three, for discharge of a firearm with gross negligence. He argues that count three was committed with the same intent and objective as counts one and two, and therefore the court violated section 654 by imposing a separate sentence on count three. We disagree.

#### A. *Background*

During the sentencing hearing, the court indicated it thought that counts one (assault) and two (threats) merged for purposes of section 654, and that it saw "an issue" as to whether count 3 (discharge of a firearm) also merged. The court stated it was inclined to find that count three "was separate not only in time but in intent because it seemed to be directed not toward Mr. Francois but towards basically everyone in that area."

Appellant's counsel argued that "the whole course of conduct . . . all related to this $800 or $900 that Mr. Painia felt he was owed," and that appellant shot into the air with the same intent and objective "to still bring fear to the victim in order to, hopefully, lead him to pay the money that Mr. Painia felt was owed to him." He also noted that it was "only a matter of minutes" between the time that appellant pointed the gun at Francois and threatened him (counts one and two), then walked

9

outside and fired into the air (count three). Thus, "in my reading of this it still is a single course of conduct that Mr. Painia is taking in order to recover that money."

The prosecutor acknowledged that the firearm discharge happened "just minutes after the threat and the assault with a firearm," but argued that after he was threatened, Francois "did flee and seek cover and was no longer in the immediate vicinity. And at that time Mr. Painia continued to threaten the other employees. And, even though the victim was no longer in front of him, then decided to negligently discharge the firearm. So, I do think there is enough to distinguish them as not being from the same course of conduct." The court agreed with the prosecution, finding that count three was "a separate and distinct act from counts 1 and 2 and that there were separate objectives."

B.     *Legal framework*

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

The section precludes imposition of multiple punishments for conduct that violates more than one criminal statute but constitutes an indivisible course of conduct. (See *People v. Harrison* (1989) 48 Cal.3d 321, 335; *People v. Perez* (1979) 23 Cal.3d 545, 551–552.) The purpose behind section 654 is "to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez, supra*, 23 Cal.3d at p. 552.) "'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654

10

depends on the *intent and objective* of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208, [Citation omitted].)

If, on the other hand, a defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even though the violations shared common acts or were parts of an otherwise indivisible course of conduct."  (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

Additionally, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment.  [Citations.]" (*People v. Beamon, supra*, 8 Cal.3d at p. 639, fn. 11; see also *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253-1254.)  This is particularly so where the offenses are temporally separated so that the defendant had an opportunity to reflect between offenses, so that the subsequent offense represents a renewed intent as well as a new (and often increased) risk of harm.  (See *People v. Kwok, supra*, 63 Cal.App.4th at pp. 1255-1256.)

Whether section 654 "applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination.  [Citations.]  Its findings will not be reversed on appeal if there is any substantial evidence to support them.  [Citations.]  We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence.  [Citation.]" (*People v. Jones* (2002) 103

11

Cal.App.4th 1139, 1143; see also *People v. Brents* (2012) 53
Cal.4th 599, 618; *People v. Osband* (1996) 13 Cal.4th 622, 730;
*People v. Williams* (1992) 9 Cal.App.4th 1465, 1473.)

    C.    *Analysis*

Appellant contends that the court should have stayed the sentence on count three under section 654 because that count was "incident to the same objective shared by counts 1 and 2." We are not persuaded. The evidence supported the conclusion that in committing counts one and two, appellant harbored the intent to force Francois to refund his money. Appellant's statements, as related by all three direct witnesses to the incident, were demands to return his money and threats to shoot if he was not repaid. Both Francois and Toney testified that appellant made these statements while pointing the gun directly at Francois.

Although appellant contends that he harbored the same intent and objective when he fired his gun into the air outside the shop, substantial evidence supports the court's conclusion to the contrary. After Francois ran from the shop, Toney testified that he heard appellant tell Thompson that he was going to "light up the place." He then saw appellant move down the street and fire the gun straight up in the air. Francois testified that after he ran across the street and called 911, he saw appellant on the sidewalk "pointing the gun at everything" before he fired one shot. Phillips did not see appellant fire, but he heard appellant tell Thompson, "We gonna blast these motherfuckers," then saw appellant move toward the street and heard the gunshot. Appellant's act of firing into the air was also captured on surveillance video. This evidence supports the trial court's conclusion that, at the time he fired, appellant's intent was no longer directed at making demands from Francois. Thus,

appellant's act of shooting into the air was done with a separate objective and therefore not subject to section 654.

There was also substantial evidence to support the trial court's conclusion that the acts were divisible in time and therefore separately punishable. Appellant argues that the evidence showed at most the passage of a few minutes between the assault and criminal threats at the auto shop and his later discharge of the gun on the sidewalk. He contends this "slight" passage of time was insufficient for purposes of section 654. But the passage of a few minutes may be sufficient where, as here, appellant performed separate acts and had sufficient time between the acts for reflection.

For example, in *People v. Trotter* (1992) 7 Cal.App.4th 363, 367–368, the appellate court affirmed the imposition of consecutive sentences where the defendant fired two shots about a minute apart at a pursuing police car. The court found that the defendant's conduct "became more egregious with each successive shot. Each shot posed a separate and distinct risk to [the officer] and nearby freeway drivers." (*Id. a*t p. 368.) Moreover, the court pointed out that the conduct at issue involved multiple volitional acts, and that "[e]ach shot required a separate trigger pull . . . separated by periods of time during which reflection was possible. None was spontaneous or uncontrollable. '[D]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior.'" (*Ibid.*, quoting *People v. Harrison, supra,* 48 Cal.3d at p. 338.)

Similarly, here, there was evidence that appellant assaulted and threatened Francois in the front of the auto shop; then, when appellant was distracted, Francois ran away.

13

Francois testified that he ran to the corner, called 911, crossed the street and hid, and then saw appellant come down the street and fire the gun. The other eyewitnesses also saw appellant leave the shop and head down the street before the gunshot. Thus, the two acts were sufficiently separate in time "to afford the defendant opportunity to reflect and to renew his or her intent." (See *Kwok, supra*, 63 Cal.App.4th at pp. 1255-1256.) Moreover, appellant's act of shooting into the air on a public street, across from a school, posed a separate and distinct risk from his earlier conduct inside the repair shop, thereby justifying separate punishment.

## II.     Mandatory Consecutive Sentencing under Section 667

Appellant contends that the trial court incorrectly held it was required to impose consecutive sentences on counts one and three pursuant to the three strikes law. We reach the merits despite the Attorney General's claim that appellant forfeited his claim by not objecting in the trial court, because appellant also raises a claim of ineffective assistance of counsel. We conclude that the trial court did not have discretion to impose concurrent sentences, and therefore affirm.

### A.     *Sentencing under section 667*

During sentencing, the court stated that it was imposing a mandatory consecutive sentence on count three pursuant to the three strikes law, specifically, section 667, subdivision (c)(7) (§ 667(c)(7)). "When a defendant is sentenced under the three strikes law (Pen. Code, § 667, subds.(b)-(i)) because he has previously been convicted of one or more serious and/or violent felony offenses (§ 667, subds. (b), (c)), the three strikes provisions mandate that '[i]f there is a current conviction for more than one

14

felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to [this section].'" (*People v. Lawrence* (2000) 24 Cal.4th 219, 222–223 (*Lawrence*), quoting § 667, subd. (c)(6) (§ 667(c)(6)); see also § 667(c)(7) [providing that for current convictions of "more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law"].)[5]

_____

[5]Prior to the passage of Proposition 36, our Supreme Court held that the trial court had discretion to impose concurrent sentences for felonies committed on the same occasion or arising from the same operative facts. (See *People v. Hendrix* (1997) 16 Cal.4th 508, 513-514 (*Hendrix*); *Lawrence*, *supra*, 24 Cal.4th at p. 223.) Proposition 36, approved by the voters in 2012, "amended section 1170.12, subdivision (a)(7), which concerns consecutive sentencing for multiple current serious and/or violent crimes, but it did not make corresponding changes to the previously identical statute, section 667, subdivision (c)(7)." (*People v. Torres* (2018) 23 Cal.App.5th 185, 197 (*Torres*).) The parties dispute whether the discretion under *Hendrix* remained good law following the passage of Proposition 36, or whether the court was also mandated to impose consecutive sentences for serious or violent felony convictions committed on the *same* occasion or arising from the *same* set of operative facts. Our sister courts are split on this question, which is currently before the California Supreme Court. (See *People v. Henderson* (2020) 54 Cal.App.5th 612, 621, review granted, Dec. 23, 2020 [holding that "Proposition 36 eliminated the trial court's discretion to impose concurrent sentences on multiple current serious or violent felony convictions"]; but see *People v. Marcus* (2020) 45 Cal.App.5th 201 [holding that court

15

The analysis appropriate for determining the application of section 667, subdivisions (c)(6) and (7), is not coextensive with the test for determining the application of section 654. (*People v. Deloza* (1998) 18 Cal.4th 585, 591–595 (*Deloza*) ["Indeed, section 654 is irrelevant to the question of whether multiple current convictions are sentenced concurrently or consecutively"].) The California Supreme Court has explained: "We read the mandatory consecutive-sentencing provision of the three strikes law as follows: If there are two or more current felony convictions 'not committed on the same occasion,' i.e., not committed within close temporal and spacial proximity of one another, *and* 'not arising from the same set of operative facts,' i.e., not sharing common acts or criminal conduct that serves to establish the elements of the current felony offenses of which defendant stands convicted, then 'the court shall sentence the defendant consecutively on each count' pursuant to subdivision (c)(6)." (*Lawrence, supra,* 24 Cal.4th at p. 233.)

B.    *Deloza* and *Lawrence*

Appellant argues that the assault (count one) and

retains discretion]; *People v. Gangel* (2019) 42 Cal.App.5th 58 [same]; *People v. Buchanan* (2019) 39 Cal.App.5th 385 [same]; *Torres, supra,* 23 Cal.App.5th 185 [same].) We need not reach this issue, as we determine that the convictions here were not committed on the same occasion and did not arise from the same set of operative facts. They  thus fall squarely within the mandatory sentencing provisions of section 667(c). (See, e.g., *Torres, supra*, 23 Cal.App.5th at p. 201 [consecutive sentencing mandate remains for "'all felonies "not committed on the same occasion, and not arising from the same set of operative facts"'" (§§ 667, subdivision (c)(6), 1170.12, subd. (a)(6))"].)

discharge of a firearm (count three) "were against a single victim committed essentially in one location and arose from the same set of operative facts." He cites two California Supreme Court cases, *Deloza* and *Lawrence*, which we agree are instructive.[6]

In *Deloza*, the defendant and an armed companion entered a furniture store, took money from the cash register and from two salespersons, and then from a customer who happened to walk up while the robbery was in progress. (*Deloza*, *supra*, 18 Cal.4th at p. 595.) The court found that the defendant's "robberies were committed in one location, and were apparently brief in duration. They were committed essentially simultaneously against the same group of victims, i.e., persons in the furniture store. . . . Nor was there any other event that could be considered to separate one 'occasion' of robbery from another." (*Id.* at pp. 595-596.) Thus, for purposes of the three strikes law, "[g]iven the close temporal and spatial proximity of defendant's crimes against the same group of victims, they were clearly committed on the 'same occasion.'" (*Ibid.*)

The court reached the opposite conclusion in *Lawrence*, *supra*, 24 Cal.4th 219. There, the defendant committed a theft in a market, assaulted an individual while fleeing the scene, then entered a residential backyard and assaulted two homeowners. The court distinguished *Deloza*, reasoning, "[b]ecause the defendant's crimes in *Deloza* were committed in one location, were brief in duration, and were committed essentially simultaneously against the same group of victims, we had no

---

[6]Respondent did not address this argument in its brief, but focused only on the issue of whether the court retained discretion following Proposition 36.

17

difficulty concluding they were 'committed on the same occasion.'" (*Id.* at p. 227.) The crimes in *Lawrence*, by contrast, involved "two separate locations (a market and a residence one to three blocks away)," were committed "most likely within two or three minutes" of each other, and included two entirely separate groups of victims (the employees and a patron of the market, and [the homeowners], who had no connection to the first crime)." (*Lawrence, supra,* 24 Cal.4th at p. 228.)[7] Thus, the court concluded that the theft and the assaults in the backyard were not committed on the "same occasion" for purposes of section 667. (*Id.* at p. 229.)

The *Lawrence* court also considered the test for whether offenses "arise from the same set of operative facts" under section 667. The court cited the analysis in *People v. Durant* (1999) 68 Cal.App.4th 1393 (*Durant*), where the defendant committed a burglary and two attempted burglaries by walking around a condominium complex and committing three crimes at three different houses. As the Supreme Court explained, the appellate court in *Durant* "found that the three crimes did not come within the 'same occasion/same operative facts' exception despite the fact that defendant had committed all the offenses at the same general location (a housing complex), against what arguably might be deemed the same group of victims (persons in the housing complex whom he burglarized or attempted to

---

[7]The court distinguished *Hendrix, supra,* 16 Cal.4th 508 on the same basis. (See *Lawrence, supra,* 24 Cal.4th at p. 228.) In *Hendrix*, the defendant pointed a gun at four people seated at a table and demanded their money. (*Id.* at p. 510.) He was convicted of two counts of robbery and two counts of attempted robbery. (*Id.* at p. 511.)

burglarize), and although the offenses occurred in succession without intervening events.  The *Durant* court emphasized that the two attempted burglaries, by their nature and elements, were completed before defendant committed the completed burglary, and that the crimes did not occur on the 'same occasion' as that term is commonly understood.  Nor did the duration of the crimes overlap, each being distinct and completed when defendant attempted to enter or successfully entered a residence and then left to go burglarize another residence." (*Lawrence*, *supra*, 24 Cal.4th at p. 232, discussing *Durant*, *supra*, 68 Cal.App.4th at pp. 1396-1400.)  Thus, "*Durant* suggests that the nature and elements of the current charged offenses—for example, the extent to which common acts and elements of such offenses unfold together or overlap, and the extent to which the elements of one offense have been satisfied, rendering that offense completed in the eyes of the law before the commission of further criminal acts constituting additional and separately chargeable crimes—are additional factors the court must consider in determining whether multiple current crimes arose from the 'same set of operative facts' when the offenses are committed more than seconds apart." (*Lawrence*, *supra*, 24 Cal.4th at p. 233.)

Turning to the facts before it, the court in *Lawrence* found that the defendant's offenses did not arise from the same set of operative facts:  "Defendant's initial crime was the shoplifting theft of a bottle of brandy from a market.  Although still in flight from the crime scene, he thereafter chose to commit new and different offenses: the trespass into the [residential] backyard, and the ensuing assaults against [the homeowners].  The first crime involved an act of theft directed at one group of victims, the second involved assaultive conduct directed at an unrelated pair

19

of victims. The two criminal episodes were separated spacially by at least one to three city blocks, and temporally by two to three or more minutes . . . . [¶] On these facts we conclude that defendant's felony assault upon [one of the homeowners] did not arise out of the 'same set of operative facts' as the theft from the market." (*Lawrence, supra*, 24 Cal.4th at pp. 233-234; see also *People v. Jenkins* (2001) 86 Cal.App.4th 699, 706-707 [consecutive sentencing mandatory where defendant assaulted first victim, went downstairs to search for weapon, pushed away a bystander, then returned upstairs to commit attempted murder of second victim].)

C.    *Analysis*

We find the facts of the instant case to be closer to *Lawrence* than *Deloza*. Appellant committed the assault in the auto repair shop by pointing a gun directly at Francois. The evidence suggested that several minutes after Francois left, appellant moved to the street and then toward the corner, where he fired the gun into the air. Thus, the crimes were separated by at least a few minutes and occurred in two separate locations. Further, the second crime involved a different set of potential victims, namely, all those at risk of appellant's grossly negligent discharge of his firearm on a public street. As such, we find that the offenses were not committed on the same occasion for purposes of section 667.

Similarly, we conclude that the offenses did not arise from the same set of operative facts. Appellant's contention that the discharge was "a continuation" of the assault and threats because appellant "continued his assault on Francois by following Francois while shouting profanities at him and discharging his firearm" is not supported by the evidence. Appellant completed

20

his assault against Francois before choosing to commit a "new and different offense[ ]" by moving to the street and discharging his gun. (See *Lawrence, supra*, 24 Cal.4th at p. 232; *Durant, supra,* 68 Cal.App.4th at p. 1406, ("[W]here the elements of the original crime have been satisfied, any crime subsequently committed will not arise from the same set of operative facts underlying the completed crime; rather such crime is necessarily committed at a different time."].) Further, there was no evidence that once appellant moved to the street, he attempted to further assault Francois, who testified that he was hiding. Thus, the commission of the assault necessarily arose out of different operative facts than those underlying the discharge offense. The trial court was correct in finding that a consecutive sentence for count 3 was mandated by the three strikes law.

## III. *Romero* Motion to Strike Prior Strike Convictions

Appellant contends the trial court abused its discretion in refusing to strike his prior serious felony "strike" convictions. We find no abuse of discretion.

### A. *Background*

Appellant filed a request to dismiss his prior strikes pursuant to section 1385 and *Romero, supra,* 13 Cal.4th 497. The two strike convictions were for criminal threats (§ 422, subd. (a)) in 1996 and assault (§ 245) in 1997. He argued that other than his strike offenses, his prior convictions were "mostly a record of theft and drug abuse related misdemeanors," except for a conviction for domestic violence (§ 273.5, subd. (a)). He also noted that his prior strikes were over 20 years old, the current offenses were non-violent except for the firearm enhancement on count two, and his "history indicates a presence of severe substance addiction and several mental health issues for which

21

treatment is available and defendant is amenable."

The People opposed, noting appellant's 13 prior convictions between 1990 and 2016, four of which were felonies. The prosecution argued that the age of appellant's strike convictions was less material because in the intervening decades, appellant "has been convicted of charges in nine other cases, including two cases of felony domestic violence," as well as "three DUIs, a theft conviction, [and] two convictions for battery."

At appellant's sentencing hearing, the court acknowledged that the prior strikes were "somewhat remote" in time, but stated that it had to consider appellant's entire criminal history. That history included a 1990 misdemeanor conviction for unlawful possession of a weapon, a 1990 misdemeanor conviction for reckless driving, the prior strikes in 1996 and 1997, a 2004 misdemeanor conviction for driving under the influence (DUI), a 2004 misdemeanor conviction for battery, a 2007 misdemeanor conviction for driving without a license, a 2008 misdemeanor conviction for petty theft, a 2009 misdemeanor conviction for battery, a 2010 felony conviction for domestic violence,[8] DUI misdemeanor convictions in 2013 and 2014, and a 2016 felony conviction for domestic violence, for which appellant was on probation at the time of instant offenses. In light of this

---

[8]Appellant informed the court during trial that his 2010 domestic violence conviction had been overturned on appeal. The court noted that the case was not included in the probation report. Appellant admitted only the 2016 conviction at trial for the purposes of counts four and five (possession with prior felony convictions). Appellant does not contend that the court erroneously relied on this conviction in denying his *Romero* motion.

"continuous history of criminal behavior, including violent offenses," the court found that appellant was not outside the spirit of the three strikes law.

The court agreed that there was "certainly some indication on the record of alcohol abuse," but stated, "I don't see any evidence of mental health issues present here. And I don't think whatever the alcohol abuse that exists justifies the relief that [appellant is] requesting." The court continued: "And, of course, I'm looking at circumstances of [the] particular offense where he has the perception where there's a debt of about $900. And instead of dealing with that through the legal system or even going and speaking to the gentleman about the debt, he essentially goes to the location early in the morning verbally harassing the individuals there. And then obtains a firearm. Points it at the owner of the location and threatens him. And then, subsequently, shoots into the air one block away from an elementary school."

The court then stated: "Added on top of that is the fact that he chose to testify in this case. His testimony was completely not believable and the jury rejected it very quickly, so I think I have to take that into account as well. I don't see any evidence of any remorse or any accountability." The court concluded that "[b]ased upon the totality of factors, I don't think [appellant] is within that category of people who should be granted relief under *Romero*. So, the motion to strike the prior convictions is denied."

B. *Legal framework*

A trial court has discretion under section 1385, subdivision (a) to "strike or vacate an allegation or finding under the three strikes law that a defendant has previously been convicted of a serious and/or violent felony" in furtherance of justice. (*People v.*

*Carmony* (2004) 33 Cal.4th 367, 373.) When evaluating whether a prior conviction should be stricken pursuant to *Romero*, a trial court must consider whether the defendant falls outside the "spirit" of the three strikes sentencing scheme by looking to the nature and circumstances of the present offense of conviction; the nature and circumstances of prior serious or violent felony convictions; and the particulars of the defendant's background, character, and prospects. (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

The three strikes law "creates a strong presumption that any sentence that conforms to [its] sentencing norms is both rational and proper." (*Carmony, supra*, 33 Cal.4th at p. 378; see also *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance"].)

We review for abuse of discretion a trial court's decision not to dismiss a prior felony conviction allegation under section 1385. (*Carmony, supra*, 33 Cal.4th at p. 373.) In applying this deferential standard, we ask "whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*People v. Williams, supra*, 17 Cal.4th at p. 162, quoting *People v. DeSantis* (1992) 2 Cal.4th 1198, 1226.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that

24

the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony, supra,* 33 Cal.4th at p. 378.)

C.      *Analysis*

The trial court did not abuse its discretion in denying appellant's *Romero* motion.  The court properly weighed and considered the evidence regarding appellant's criminal history, the nature and circumstances of his current offenses, and the potentially mitigating factors of alcohol abuse and mental health issues.  In particular, the court found that the remoteness of the prior strikes (also convictions for assault and criminal threats) was countered by appellant's continuous criminal history following those convictions.  Between 2004 and 2016, appellant suffered eight convictions, the last of which was a violent felony for which appellant was on probation at the time of the current offenses.  We reject appellant's contention that he had a "non-violent and non-serious record."  The court was well within its discretion to conclude that appellant's "continuous history of criminal behavior, including violent offenses," over the past two decades brought appellant within the spirit of the three strikes law.  (See *People v. Leng* (1999) 71 Cal.App.4th 1, 14 ["The well-recognized purpose of the three strikes law is to provide increased punishment for current offenders who have previously committed violent or serious crimes and have therefore not been rehabilitated or deterred from further criminal activity as a result of their prior imprisonment."]; see also *Williams, supra,* 17 Cal.4th at p. 163 [finding that the defendant's lengthy criminal history indicated that he "'had been taught, through the application of formal sanction, that [such] criminal conduct was unacceptable—but had failed or refused to learn his lesson'"].)

The court also weighed heavily the circumstances of appellant's current offenses. As the court explained, based on a disagreement over a $900 debt, appellant verbally harassed the auto shop employees, retrieved a gun, pointed it at Francois and threatened him. Appellant then fired his gun into the air on a public sidewalk, one block from an elementary school. In addition, the court considered the evidence of appellant's history of alcohol abuse, but did not find it outweighed the other factors present. The court rejected the contention that appellant also suffered from mental health issues, finding that claim unsupported by the evidence. Appellant does not cite any evidence to the contrary.

Appellant argues that the court improperly relied on a finding that appellant's trial testimony was not believable and was rejected by the jury. We are not persuaded that the trial court acted improperly. The court's statements regarding appellant's lack of credibility at trial were directly followed by the court's finding that appellant lacked "any remorse or any accountability." Appellant does not dispute that the court could properly consider a lack of remorse by appellant. (See *People v. Bemore* (2000) 22 Cal.4th 809, 854.)

Moreover, the case cited by appellant, *People v. Howard* (1993) 17 Cal.App.4th 999 (*Howard*), is inapposite. *Howard* did not involve a court's discretion to reduce a sentence by striking a prior conviction. There, the court held that in order to impose an increased sentence on the ground the defendant committed perjury at trial, the trial court was required to make on-the-record findings as to all the elements of a perjury violation. (*Id.* at p. 1004.)

26

In sum, appellant's argument that the trial court should have weighed certain factors more heavily than others does not establish an abuse of discretion.  Because the trial court properly "'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law'" (*Carmony*, *supra*, 33 Cal.4th at p. 378), its determination was not in error.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.

CURREY, J.